**OHIO HOSPITAL ASSOCIATION and American Hospital Association, Plaintiffs–Appellants,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Defendant–Appellee.**

No. 97–4217.

United States Court of Appeals, Sixth Circuit.

Argued: Oct. 27, 1998

Decided and Filed: Dec. 29, 1999

James J. Hughes (argued and briefed), Thomas D. Lambros (briefed), James F. Flynn (briefed), Bricker & Eckler, Columbus, Ohio, for Appellants.

Jeffrica Jenkins Lee (argued and briefed), Barbara, C. Biddle, Douglas N. Letter (briefed), U.S. Department of Justice, Civil Division, Washington, D.C., for Appellee.

\* The Honorable John Gibson, Circuit Judge of the United States Court of Appeals for the

Before: NELSON, CLAY, and JOHN R. GIBSON\*, Circuit Judges.

## OPINION

DAVID A. NELSON, Circuit Judge.

Employing tactics that the district court characterized as "heavy-handed," the Secretary of Health and Human Services has threatened a number of Ohio hospitals with draconian penalties under the False Claims Act if the hospitals do not disgorge double the amount of alleged overpayments received under the Medicare program for performing certain outpatient laboratory tests.

The hospitals contend that at the time they submitted reimbursement claims for the tests in question, the billing standards by which they routinely measured the amount of their claims were consistent with the rules and regulations of the Department of Health and Human Services. After several years in which the hospitals' billing standards are said to have been tacitly approved by the Secretary, however, the Secretary changed her mind as to the propriety of these standards.

The Secretary has never initiated a rulemaking proceeding under the Administrative Procedure Act to formalize the billing standards she now espouses. Neither has she initiated administrative proceedings to recoup the alleged overpayments. Instead, as part of a sweeping investigation called the "Ohio Hospital Project," the Secretary has allegedly used the Federal Bureau of Investigation and other elements of the Department of Justice to coerce the hospitals into retroactively accepting revised standards and paying the Secretary large sums of money under threat of having to pay much more if the hospitals decline to enter into settlement agreements on the Secretary's terms.

Unwilling to settle on terms they considered unjust, and threatened with False

Eighth Circuit, sitting by designation.

Claims Act litigation entailing risks they considered unacceptable, the hospitals, through trade associations of which they are members, brought the present declaratory judgment action against the Secretary. The plaintiffs sought a judicial determination as to the legality of the billing standards in question and of the Secretary's alleged misuse of the False Claims Act.

The Secretary moved for dismissal on jurisdictional grounds. Among other things, she contended that

— she is not subject to suit for her alleged misuse of the False Claims Act because, as between the Secretary and the Attorney General, discretion to sue under the Act is vested solely in the Attorney General, and

— jurisdiction to grant declaratory relief as to the propriety of the billing standards is barred by an express statutory preclusion of federal-question jurisdiction over any claim arising under the Medicare Act. See 42 U.S.C. § 405(h), as incorporated in the Medicare Act by 42 U.S.C. § 1395ii.

Agreeing with both of these contentions, the district court dismissed the case in its entirety. See *Ohio Hospital Ass'n v. Shalala*, 978 F.Supp. 735 (N.D.Ohio 1997). Upon review, we conclude that the court was right to accept the first contention but wrong to accept the second. The dismissal order will therefore be vacated and the case will be remanded for further proceedings.

I

Part I of the district court's opinion contains an extensive and very helpful recital of the factual background. *Shalala*, 978 F.Supp. at 736–38. This recital is unchallenged on appeal, and we incorporate it here. In brief outline, the salient facts are these.

The Medicare Act, as codified at 42 U.S.C. §§ 1395 *et seq.*, established a health insurance program ("Medicare") for the aged and disabled. The members of the plaintiff associations are Ohio hospitals that have entered into agreements with the Secretary to provide services, on a cost-reimbursable basis, to patients covered by Medicare.

The hospitals' applications for reimbursement are submitted to designated "fiscal intermediaries"—usually insurance companies—that handle the paperwork for the Secretary. To obtain reimbursement, the hospitals must assign "billing codes" to the services they have provided. (The Rosetta Stone for the billing codes is found in an American Medical Association publication called "Physicians' Current Procedural Terminology," or "CPT.") In paying for services rendered by the hospitals, the fiscal intermediaries use a reimbursement rate set by the Secretary for each CPT billing code.

During year-end cost reviews, the Secretary has an opportunity to consider all payments made by the fiscal intermediaries and to adjust any payments found to be in error. If a hospital disagrees with any such adjustment, it may invoke established administrative procedures to challenge the Secretary's position.

The hospitals had no opportunity to invoke these administrative procedures in connection with the disputes that led to the filing of the instant lawsuit, the Secretary never having taken the type of administrative action from which administrative appeals could be prosecuted. The disputes did not arise in connection with year-end adjustments, but in connection with an investigation instigated, presumably, by the Secretary and spearheaded by the offices of the United States Attorneys for the Northern and Southern Districts of Ohio.

The investigation turned on reimbursement of the hospitals for outpatient laboratory tests. Although, as noted above, the reimbursements in question were not challenged by the Secretary during her year-

end reviews, the Secretary came to believe that the methodology used by the hospitals in calculating their reimbursement claims was improper in certain respects. The Secretary apparently communicated her concerns to the Attorney General, and the investigation—the "Ohio Hospital Project"—followed.

Some of the hospitals were first apprised of the investigation when agents of the Federal Bureau of Investigation appeared on their premises, unannounced, and began interviewing hospital staffers. The FBI agents said that they were conducting an investigation that might lead to the imposition of civil or criminal sanctions, including imprisonment.

Other hospitals were notified of the investigation through letters signed by an Assistant United States Attorney. In the Northern District of Ohio, at least, the typical letter opened with a paragraph stating that the hospital might have used "two or more CPT billing codes in lieu of one inclusive code" when seeking reimbursement for outpatient laboratory services; that such code usage might have constituted "the submission of false claims in violation of the False Claims Act, 31 U.S.C. §§ 3729 et seq.;" and that "[t]his statute allows the United States to recover three times its actual damages plus a civil penalty of not less than $5,000 or more than $10,000 for each false claim submitted."

The letters went on to offer an opportunity to participate in a "self-disclosure program" under which the hospitals would

- examine the reimbursement applications they had submitted in past years and flag those involving the use of CPT billing codes in a manner now asserted to be improper;

- execute an agreement (on a form enclosed with the letter) tolling the statute of limitations; and

- pay "an amount which is twice the actual overpayment...."

Recipients of these letters were warned that if they did not wish to participate in the self-disclosure program, "then this office will proceed in the normal course with a review of your institution's activities and seek the appropriate remedy."

The remedy mentioned in the letters—treble damages plus a penalty of $5,000 to $10,000 for each individual item determined to be a False Claims Act violation—seems, not surprisingly, to have caused the hospitals real concern. The plaintiffs have as much as admitted that some reimbursement claims of types not placed in issue here might well have violated the False Claims Act. With respect to the particular categories of reimbursement at issue here, however, the hospitals insist that the standards under which the amounts billed were determined—standards that, for example, made it permissible to use one CPT billing code for the creatine-kinase component of a seven-chemical automated laboratory test and a "bundled" CPT billing code for the remaining six components of the test, see *Shalala*, 978 F.Supp. at 737—were permissible under the Secretarial guidance in effect at the time reimbursement was obtained. The hospitals were obviously unhappy about the prospect of having to disgorge twice the amount of "overpayments" that they did not view as overpayments at all in order to limit their exposure to full statutory penalties for actual violations of the False Claims Act. With no administrative remedies available to them, the hospitals caused their trade associations to file the instant declaratory judgment action.

## II

In Counts I and II of their complaint the plaintiffs allege that the Secretary has implemented a number of specified positions on outpatient lab test billing standards "in the absence of any rule or regulation supporting any such position;" that the positions so implemented "represent a change in existing law or policy and affect[ ] existing substantive rights of Ohio hospitals;"

and that the Secretary's actions are in violation of her statutory duty under the Medicare Act (42 U.S.C. § 1395hh) and the Administrative Procedure Act (5 U.S.C. § 553) to promulgate regulations on matters of this sort. In the prayer for relief associated with these counts, the plaintiffs seek a declaration that the positions taken by the Secretary are "without basis under existing law" and constitute "substantive rules which have not been properly promulgated...." The plaintiffs also ask that the Secretary be enjoined from enforcing the challenged positions.

Responding to the plaintiffs' complaint with a motion to dismiss under Rule 12(b)(1), Fed.R.Civ.P., the Secretary argued that federal-question jurisdiction over Counts I and II is precluded by 42 U.S.C. § 405(h), a Social Security Act provision incorporated in the Medicare Act by 42 U.S.C. § 1395ii. We shall turn to the language of § 405(h) presently, but first we need to take a brief look at the subsections leading up to it.

The subsections preceding § 405(h) spell out procedures under which applications for social security benefits are adjudicated. Under 42 U.S.C. § 405(b), to begin with, "[t]he Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for [Social Security benefits]...." Upon request, the Commissioner must accord a dissatisfied applicant (or affected family members) an evidentiary hearing. *Id.* Once the Commissioner has issued a final decision after a hearing to which the individual was a party, 42 U.S.C. § 405(g) provides, the individual "may obtain a review of such decision by a civil action commenced [in a United States District Court]...." And 42 U.S.C.

§ 405(h)—the section on which the Secretary relies here—then provides as follows:

"The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. *No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.*"[1] (Emphasis supplied.)

The Medicare Act, in turn, provides that individuals claiming Medicare benefits shall be entitled both to evidentiary hearings before the Secretary and to judicial review of the Secretary's final decision in the same way that applicants for Social Security benefits are entitled to hearings and judicial review under §§ 405(b) and (g). See 42 U.S.C. § 1395ff. Similarly, § 1395ii makes the provisions of § 405(h) and other designated subsections applicable with respect to the Medicare subchapter "to the same extent as they are applicable with respect to subchapter II of this chapter [the Social Security subchapter], except that, in applying such provisions with respect to this subchapter, any reference therein to the Commissioner of Social Security ... shall be considered a reference to the Secretary...."

When we read §§ 1395 and 405 together, then, we find that after providing for the adjudication of Medicare claims in the same way that Social Security claims are adjudicated, Congress has said this with respect to Medicare claims:

---

1. The sections of Title 28 referred to in the third sentence give the federal district courts original jurisdiction over civil actions arising under the laws of the United States and certain actions against the United States for the recovery of money. The subchapter referred to as "this subchapter" is Subchapter II of

Chapter 7, captioned "FEDERAL OLD–AGE, SURVIVORS, AND DISABILITY INSURANCE BENEFITS." The Medicare subchapter Subchapter XVIII—is captioned "HEALTH INSURANCE FOR AGED AND DISABLED."

The findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

Focusing solely on the third sentence, and ignoring the context in which that sentence appears, the Secretary argues here, as she did before the district court, that insofar as Counts I and II of the complaint are concerned, the plaintiffs' declaratory judgment action is an action "to recover on [a] claim arising under this subchapter." In this connection the Secretary relies heavily upon *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), and *Heckler v. Ringer*, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984). That reliance, we believe, is misplaced.

*Weinberger v. Salfi* arose out of Social Security claims asserted by the widow and step-child of a deceased wage earner. The claims were denied administratively on the strength of a statutory "duration-of-relationship" rule. Instead of obtaining a final decision on the claims after an evidentiary hearing and challenging the constitutionality of the duration-of-relationship rule in judicial review proceedings under 42 U.S.C. § 405(g), the claimants sought to bring their constitutional challenge in a class action that invoked federal-question jurisdiction under 28 U.S.C. § 1331. A three-judge federal district court accepted jurisdiction on the theory that the third sentence of § 405(h) "amounted to no more than a codification of the doctrine of exhaustion of administrative remedies." *Salfi*, 422 U.S. at 757, 95 S.Ct. 2457. The Supreme Court rejected this reading of § 405(h) as "entirely too narrow," *id.*, and

held that the district court had no jurisdiction over the class action.

*Heckler v. Ringer* was an action by individual Medicare claimants who sought coverage for a type of surgical procedure that the Secretary determined was not "reasonable and necessary" within the meaning of the Medicare Act. Instead of challenging the Secretary's determination in § 405(g) proceedings brought after issuance of a final decision under § 405(b), the claimants sued the Secretary for declaratory and injunctive relief on the basis of (*inter al.*) 28 U.S.C. § 1331. Again the Supreme Court held that jurisdiction was barred by the third sentence of § 405(h); the only avenue for judicial review, the Court concluded, was that provided by § 405(g).

In both *Salfi* and *Ringer*, it is important to understand, individual claimants were seeking a judgment directing the payment of benefits. The Supreme Court emphasized this fact in explaining, in both cases, why it concluded that the actions had been brought "to recover on … claim[s] arising under" the Social Security Act or the Medicare Act within the meaning of the third sentence of § 405(h). In the case at bar, by contrast, the plaintiffs are not seeking a judgment directing the payment of benefits. Unlike the plaintiffs in *Salfi* and *Ringer*, neither the plaintiff hospital associations nor the individual hospitals they represent have any remedies under § 405(b). And no judicial remedy is available to them under § 405(g), of course.

In this respect the instant case resembles *Michigan Academy of Family Physicians v. Blue Cross and Blue Shield of Michigan*, 757 F.2d 91 (6th Cir.1985), *aff'd. sub nom. Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986). There a group of physicians wished to challenge the validity of a regulation authorizing different reimbursement rates for similar services. The physicians had no access to the courts under § 405(g); unless they could invoke federal-question jurisdiction

under 28 U.S.C. § 1331, they had no way of obtaining judicial review. Relying on *Ringer*, the Secretary contended that the third sentence of § 405(h) left the plaintiffs without any judicial remedy at all. We rejected the Secretary's argument, holding (see 757 F.2d at 94) that *Ringer* "did not proscribe judicial review ... where the challenge was made by a party other than a claimant for benefits." The Supreme Court, expressing itself as "most reluctant" to read § 405(h) as prohibiting all judicial review of the action complained of by the physicians, affirmed. *Bowen*, 476 U.S. at 680–82, 106 S.Ct. 2133.

■ In affirming our court's judgment, as the Court of Appeals for the Eleventh Circuit observed in *United States ex rel. Body v. Blue Cross and Blue Shield of Alabama, Inc.*, 156 F.3d 1098, 1109 (11th Cir.1998), the *Bowen* Court recognized "that subsection 405(h), viewed within the context in which it was drafted and made applicable to Medicare, simply seeks to preserve the integrity of the administrative process Congress designed to deal with challenges to amounts determinations by dissatisfied beneficiaries, not to serve as a complete preclusion of all claims related to benefits determinations in general." Expanding on this theme earlier in its opinion, the Eleventh Circuit explained its thinking as follows:

> "Taken alone, the third sentence of the subsection appears to be a plenary revocation of federal-question jurisdiction for Medicare-related cases. Taken in context, however, it is quite clear that the provision is intended to prevent circumvention of the administrative process provided for the adjudication of disputes between Medicare beneficiaries and the government (or agents of the government such as fiscal intermediaries). The provision takes away general federal-question jurisdiction over claims by Medicare beneficiaries, forcing them to pursue their claims in a hearing under subsection 405(b) and then, if necessary, in an appeal under the specific grant of jurisdiction contained in subsection 405(g). Thus, the third sentence is the final piece in an administrative scheme designed to give the administrative process the first opportunity to resolve disputes over eligibility or the amount of benefits awarded under the Act.

> "Nothing in subsection 405(h), however, or in the rest of section 405, suggests that the third sentence of subsection 405(h) eliminates federal-question jurisdiction over all actions implicating the Medicare Act, regardless of the availability—or unavailability—of administrative and judicial review within the Medicare administrative scheme. Subsection 405(h) prevents beneficiaries and potential beneficiaries from evading administrative review by creatively styling their benefits and eligibility claims as constitutional or statutory challenges to Medicare statutes and regulations. It does not create two class of claims 'arising under' Medicare: those that may be brought administratively and then appealed under the grant of jurisdiction in subsection 405(g), and those that are not subject to administrative review and are therefore not reviewable *at all*. Actions such as Body's, which do not seek payment from the government and could not be brought under section 405, are therefore not barred by subsection 405(h)." *Body*, 156 F.3d at 1103–04 (footnotes omitted).

As the Eleventh Circuit went on to demonstrate very persuasively, nothing in *Salfi* or *Ringer* dictates a contrary conclusion. See *Body*, 156 F.3d at 1105–07. The Eleventh Circuit's logic seems sound to us, and we adopt it here. That logic clearly compels the conclusion that the district court ought to have rejected the Secretary's § 405(h) argument in the case at bar.

### III

■ In Counts III and IV of their complaint the plaintiffs seek relief on the grounds that "[the] Defendant Secretary,

through the U.S. Attorney's Office and the U.S. Department of Justice, has threatened and continues to threaten Ohio hospitals that charges will be brought against them under the False Claims Act for Outpatient Laboratory Testing charges unless the hospitals enter into settlements that impose penalties for violations of billing rules that were not in existence at the time the bills were submitted;" that such use of the U.S. Attorney's Office and the Department of Justice "deprives hospitals of their property without due process of law in violation of the Fifth Amendment of the United States Constitution;" and that "use of the False Claims Act in this manner is contrary to the purpose and intent standard of the False Claims Act, 18 U.S.C. § 287 and 31 U.S.C. § 3729."

The district court dismissed Counts III and IV on the ground that the United States cannot file a False Claims Act suit against a defendant through the Secretary of Health and Human Services; it can do so only through the Attorney General, and the Attorney General has not been named as a party here. Although the hospitals allege that the Secretary is the moving force behind the threatened False Claims Act prosecutions, the district court noted that "it is still only the Attorney General who has the discretion and authority to ultimately pursue a False Claims Act pros-

ecution." *Shalala*, 978 F.Supp. at 739 n. 5. The district court concluded that it had no equitable jurisdiction to control the exercise of the Attorney General's discretion through an order directed to the Secretary of Health and Human Services. We agree. The dismissal of Counts III and IV will be affirmed for essentially the reasons stated by the district court at *Shalala*, 978 F.Supp. at 738–740.

The Secretary presents various arguments on appeal that were not addressed by the district court. The most prominent is an argument that the plaintiff hospital associations lack standing to sue on behalf of their members. We shall leave it to the district court to deal with these matters in the first instance on remand.

For the reasons stated, the judgment appealed from is **AFFIRMED** in part and **REVERSED** in part. The case is **REMANDED** to the district court for further proceedings not inconsistent with this opinion.