MINER, Circuit Judge:
 

 Plaintiff-appellant Binder & Binder, PC (“Binder”) appeals from a judgment entered on August 22, 2005 in the United States District Court for the Eastern District of New York (Platt, J.) dismissing for lack of jurisdiction its action against defendant-appellee Jo Anne Barnhart, as the Commissioner of the Social Security Administration (the “SSA”). Binder brought this action to secure a judgment declaring that it was entitled to keep attorneys’ fees paid to it by the SSA in connection with its representation of Gail S. Delnegro (“Del-negro”), who had applied for and received Social Security disability benefits. The SSA had certified and later distributed payment to Binder in the amount of $1,200, which had been withheld from Del-negro’s past-due benefits pursuant to the Social Security Act. Delnegro objected to the certified payment because she claimed that her debt to Binder had been discharged in bankruptcy. Informed of Del-negro’s discharge in bankruptcy, the SSA then demanded back the payment made to Binder, explaining that any debt owed to Binder had been discharged by the bankruptcy order. Binder refused to return the money and brought this declaratory judgment action in the District Court.
 

 Following the parties’ motions for summary judgment, the District Court granted summary judgment to the SSA, the court having found that (i) Binder was not entitled to attorneys’ fees under the Social Security Act in connection with its representation of Delnegro; and (ii) any attorneys’ fees owed had been extinguished by discharge order granted to Delnegro by the bankruptcy court. Following entry of judgment, Binder appealed to this Court, and we remanded to the District Court for a determination as to whether there was subject matter jurisdiction over Binder’s claims.
 
 See Binder & Binder, P.C. v. Barnhart,
 
 399 F.3d 128, 133-34 (2d Cir.2005). The District Court then dismissed the action for lack of subject matter jurisdiction, concluding that Binder’s claims did not arise under the Social Security Act.
 

 
 *143
 
 For the reasons that follow, we find that subject matter jurisdiction lies and that the SSA lacked the authority to demand back the payment made to Binder. We vacate the judgment of the District Court and remand for proceedings consistent with this opinion.
 

 BACKGROUND
 

 Delnegro’s application for disability benefits under the Social Security Act (the “Act”) was denied on July 21, 1998. She thereafter retained Binder to pursue her claim. On August 25, 1998, Delnegro executed and submitted to the SSA (i) a Social Security Retainer Agreement; and (ii) an Appointment of Representative. Also on August 25, 1998, Delnegro and Binder executed an Expedited Fee Agreement in accordance with 42 U.S.C. § 406 (the “Agreement”). That Agreement provided:
 

 The claimant and the firm of Binder and Binder ... agree that if claimant receives a fully or partially favorable decision, the legal fee owed by the claimant is equal to the lesser of 25% of the past-due benefits or $4,000. Under Social Security Regulations, “past-due benefits” is the total amount of retroactive money to which the claimant and all family members become entitled.... This fee agreement is only valid if a fully or partially favorable decision is rendered prior to oral testimony being taken at an administrative hearing before an administrative law judge.
 

 By a request for reconsideration submitted by Binder on September 17, 1998, Binder requested that the SSA reconsider its July 21,1998 denial of Delnegro’s application for SSA disability benefits. The SSA responded by Notice of Reconsideration, dated September 28, 1999, and granted Delnegro’s request for reconsideration but then adhered to its July 21, 1998 determination denying Delnegro’s application. By letter dated November 30, 1999, Delnegro discharged Binder and advised that she had retained Joseph Puzzarella (“Puzzarella”) to represent her in her continued efforts to obtain Social Security disability benefits. She also advised the SSA of the change in representation, and Puz-zarella provided the SSA with a copy of the retainer agreement that he and Del-negro had executed.
 

 By letter dated December 30, 1999, Binder notified both the SSA and Delneg-ro of its intent to petition the SSA for its legal fees in the event that Delnegro’s application for benefits were granted. Binder also requested that the SSA notify it in the event that the benefits were awarded.
 

 Puzzarella’s efforts on behalf of Delneg-ro eventually proved successful. The SSA, by notice dated February 25, 2000, advised Delnegro that it had awarded the sought-after Social Security disability benefits. The SSA also approved Delnegro’s fee agreement with Puzzarella as to form. By letter to the SSA dated March 24, 2000, Puzzarella submitted a petition for attorneys’ fees in the amount of $250. He also enclosed a copy of an undated letter from Delnegro, in which she objected to any payment of fees to Binder because of her dissatisfaction with Binder’s services.
 

 The SSA notified Binder, by letter dated April 7, 2000, that Delnegro had been awarded SSA disability benefits. Enclosed with the letter was a copy of the notice of award sent to Puzzarella and Delnegro. Pursuant to 42 U.S.C. § 406(a)(4), if the SSA determines that the claimant is entitled to past-due benefits, and the claimant is represented by an attorney, the SSA “shall ... certify for payment out of such past-due benefits (as determined before any applicable reduction ...) to such attorney an amount equal to so much of the maximum fee as does not
 
 *144
 
 exceed 25 percent of such past-due benefits.” Accordingly, the notice sent to Puz-zarella and Delnegro stated that because Delnegro was represented by an attorney, the SSA had retained $4,116.75 or 25% of the past-due benefits owed to Delnegro to pay for legal fees in the event that her attorney(s) claimed legal fees up to the statutory maximum.
 

 Informed of Delnegro’s award, Binder submitted a petition dated July 5, 2000 to the SSA requesting that the SSA approve attorneys’ fees in the amount of $1,200 for services provided to Delnegro. Binder’s petition was supported by a contemporaneous time account, which detailed 22.75 hours of work expended on Delnegro’s behalf to obtain benefits.
 

 On September 20, 2001, both Delnegro and her husband filed a voluntary petition under Chapter 7 of the bankruptcy laws in the United States Bankruptcy Court for the District of New Jersey. Delnegro listed Binder’s fee of $1,200 on Schedule F of her bankruptcy petition as an unsecured, nonpriority claim that she “disputed.” On January 3, 2002, the Bankruptcy Court granted Delnegro a discharge pursuant to 11 U.S.C. § 727.
 

 After the Bankruptcy Court granted a discharge in bankruptcy to Delnegro, the SSA provided notice to both Binder and Delnegro, by letter dated January 11, 2002, that it had approved Binder’s petition for attorneys’ fees in the amount that Binder had claimed. The SSA advised both Binder and Delnegro that they could contest the fee amount within thirty days.
 

 By letter to the SSA, dated January 12, 2002, Delnegro objected to the award of attorneys’ fees in any amount to Binder and reiterated her dissatisfaction with Binder’s services. She also advised the SSA that she had previously filed a petition seeking relief under Chapter 7 of the Bankruptcy Code and had listed Binder’s claim for fees as an unsecured, nonpriority claim that she disputed. Delnegro further advised the SSA that on January 3, 2002, she had received a discharge from the Bankruptcy Court relieving her of her personal debts.
 

 Administrative Law Judge Stephen Wright (the “ALJ”) of the SSA Office of Hearings and Appeals (Region II) then notified Binder, by letter dated February 4, 2002, that Delnegro had objected to Binder’s fee of $1,200 and that Binder’s fees would be reviewed. The February 4 letter from the ALJ included a copy of Delnegro’s January 12, 2002 letter in which Delnegro set forth her objections to Binder’s petition for attorneys’ fees. After receiving notice of Delnegro’s objection from the ALJ, Binder responded to the ALJ, by letter dated February 11, 2002, stating that the $1,200 in fees was reasonable based on 22.75 hours of work and that the fee should be paid.
 

 Despite Delnegro’s objection and the then-pending fee dispute, Binder received its fee of $1,200 from the SSA on March 21, 2002. Then, on March 29, 2002, the SSA demanded that Binder relinquish and return the $1,200 to Delnegro. In making this demand, the SSA explained that since Delnegro had filed for bankruptcy protection, and had received a discharge, the $1,200 had been paid to Binder by the SSA in error.
 

 On April 19, 2002, the SSA sent Binder an “Order Vacating Authorization to Charge and Collect Fee.” The SSA based the decision giving rise to this order on a document designated Program Circular OCO 98-050 (the “Program Circular”) and entitled “Bankruptcy and Attorneys Fees,” dated March 13, 1998. It provides that where a bankruptcy court discharges all of a claimant’s debts, including the representative’s fee, no fee may be authorized or
 
 *145
 
 paid by the SSA. The Program Circular is an internal document of the SSA that “was prepared by a former Reconsideration Reviewer for use in the ... training material.” The Program Circular includes the following language:
 

 Section 206 of the Social Security Act provides that the Administration must approve the amount of the fee a representative may charge for his/her services before the Administration. If the representative is an attorney in good standing admitted to the state, federal, or Supreme Court bar, up to 25 percent of past-due benefits on a claim must be withheld for direct payment of the attorney’s fee.
 

 However, if the claimant files for bankruptcy and lists the representative as an unsecured debtor [sic], no action may be taken to authorize a fee until the bankruptcy is completed.
 
 If the bankruptcy court discharges all of the claimant’s debts, including any fee for the representative, we cannot authorize or pay any fee to the representative.
 
 Any withheld benefits must be released to a claimant.
 

 If the representative [attorney] provides a copy of an Order of the Bankruptcy Court excluding him/her from the bankruptcy petition, we can proceed in the usual manner.
 

 Refusing to relinquish its $1,200 fee, Binder filed a Complaint on May 17, 2002 in the United States District Court for the Eastern District of New York, seeking “a declaratory judgment that it is entitled to retain the statutory fees that it had received from the [SSA].” In its Complaint, Binder presented five claims, asserting: (i) that the SSA violated Binder’s due process rights by “unilaterally” vacating the fee award “without proper notice to [Binder] and an opportunity ... to be heard”; (ii) that Binder possessed an attorneys’ charging lien in accordance with New York Judiciary Law § 475
 
 [1]
 
 and that the charging lien survived the bankruptcy discharge order; (iii) that the legal fees earned in this case derived from exempt assets in bankruptcy — to wit, the disability benefits— and, thus, because the bankruptcy trustee never avoided Binder’s interest in those assets or attempted to recover monies paid to Binder by the SSA, the SSA impermis-sibly “expunge[d]” Binder’s attorneys’ lien and “require[d] the turnover of said duly paid attorneys fees”; (iv) that it did not receive notification of the commencement “of [Delnegro’s] bankruptcy case, nor did it have actual knowledge of the commencement” of the bankruptcy action, and, therefore, that Delnegro’s debt to Binder was not discharged; and (v) that even if Delnegro’s liability for the attorneys’ fees was discharged in bankruptcy, the SSA remained liable for the distribution of those previously awarded fees notwithstanding the issuance of the discharge order. SSA filed its Answer on August 15, 2002.
 

 By notice dated August 29, 2002, Binder moved for summary judgment in the Dis
 
 *146
 
 trict Court. Binder argued that the SSA was obligated to pay its attorneys’ fees because (i) the withheld fees were subject to Binder’s attorneys’ charging lien, created under state law, and that the charging lien was non-dischargeable and had survived Delnegro’s bankruptcy discharge; and (ii) the Program Circular violated Binder’s due process rights because it eliminated — without notice or a hearing— both the attorneys’ charging hen and the SSA’s statutory obligation, pursuant to 42 U.S.C. § 406(a)(4), to withhold up to 25% of past-due benefits for payment of legal fees.
 

 By notice of cross-motion dated October 31, 2002, and SSA’s Rule 56.1 Statement of Undisputed Facts, with accompanying exhibits, the SSA cross-moved for summary judgment, arguing that sovereign immunity and the anti-alienation provision of 42 U.S.C. § 407(a)
 
 [2]
 
 each compelled a finding that Delnegro’s social security benefits were unaffected by Binder’s alleged charging lien. Further, the SSA argued that the SSA is not obligated to pay attorneys’ fees where the underlying obligation has been discharged in bankruptcy. Similarly, the SSA claimed that it had not deprived Binder of any property rights that Binder might have in Delnegro’s past-due benefits because any of Delnegro’s debts to Binder were discharged. Moreover, notwithstanding the bankruptcy discharge, the SSA posited that Binder never possessed a viable charging lien under state law that could properly attach to Delnegro’s awarded benefits. On December 13, 2002, the District Court denied Binder’s motion, as well as the SSA’s cross-motion, pending a determination by the Bankruptcy Court as to whether Delnegro’s discharge extinguished Binder’s claim for fees payable from Delnegro’s past-due benefits.
 

 On December 31, 2002, Binder filed a Complaint in the United States Bankruptcy Court for the District of New Jersey seeking a declaration that Delnegro’s discharge did not extinguish Binder’s claim for attorneys’ fees from Delnegro’s past-due benefits because it had received no notice of the original bankruptcy proceeding. Both parties submitted motions for summary judgment. In three separate orders, the Bankruptcy Court (Lyons, J.): (i) dismissed Binder’s motion for the entry of a default judgment for Delnegro’s failure to appear; (ii) dismissed SSA’s cross-motion for summary judgment; and (iii) ordered the adversary proceeding closed. The Bankruptcy Court orders supported the position held by Delnegro and the SSA that the bankruptcy discharge had extinguished all of Delnegro’s personal debts, including the attorneys’ fees owed to Binder. We interpreted the Bankruptcy Court orders to require Binder to establish his charging lien in state court. We opined that, under the bankruptcy code, such a lien would survive the discharge.
 
 See Binder & Binder, P.C. v. Barnhart,
 
 399 F.3d 128, 129-30 (2d Cir.2005) (citing 11 U.S.C. § 522(c)(2)) [hereinafter
 
 “Binder
 
 I”].
 

 After the Bankruptcy Court issued its orders, the parties resubmitted their motions for summary judgment to the District Court. By Memorandum and Order dated August 26, 2003, the District Court denied Binder’s motion for summary judgment, granted SSA’s motion for summary judgment, and dismissed Binder’s Complaint.
 
 See Binder & Binder, P.C. v.
 
 
 *147
 

 Barnhart,
 
 281 F.Supp.2d 574 (E.D.N.Y.2003). The District Court determined that Section 407 of the Act “is broadly phrased and announces a legislative objective ... that the flow of [Social Security] funds ... is not subject to attachment by creditors” and thus concluded that Binder’s attorneys’ charging lien could not attach to Delnegro’s disability benefits.
 
 Id.
 
 at 579 (internal quotation marks omitted). By timely notice of appeal, dated September 2, 2003, Binder appealed to this Court from that judgment of the District Court.
 

 In an opinion of this Court dated February 17, 2005, we vacated the judgment of the District Court and remanded the case to the District Court for it to determine in the first instance whether it had subject matter jurisdiction with respect to Binder’s claims.
 
 Binder I,
 
 399 F.3d at 133-34. In
 
 Binder I,
 
 we began our analysis of subject matter jurisdiction with a characterization of Binder’s claims. We found that Binder had raised essentially two claims — “one under the Due Process Clause of the Constitution, [and] the other under the Social Security Act.”
 
 Id.
 
 at 130. As to due process, Binder alleged that it was denied notice and an opportunity to be heard in the Bankruptcy Court prior to Delnegro’s discharge. With respect to Binder’s statutory claim under the Social Security Act, Binder claimed, notwithstanding questions about the validity of the discharge of the claim, that the Social Security Act created a vested property right in the attorneys’ fees earned, in the form of an attorney charging lien, pursuant to § 406(a)(4) of the Act.
 
 Id.
 
 Accordingly, Binder asserted federal question jurisdiction as well as judicial review jurisdiction under the Social Security Act for the claims that he raised.
 

 We noted that there were “serious questions” about whether Binder’s claims arose under the judicial review provisions of the Social Security Act.
 
 Id.
 
 at 132. In our review, however, we discussed three possible sources of jurisdiction over this case:
 

 The most obvious source of jurisdiction over Social Security claims is section 405(g) of the Act, which provides in pertinent part that “[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party ... may obtain a review of such decision by a civil action” brought in federal district court. 42 U.S.C. § 405(g). But section 405(g) is seemingly inapplicable to Binder’s suit because that section limits judicial review to those decisions involving “a party.”
 

 Binder I,
 
 399 F.3d at 130 (omission in original). We then noted that a second possible source of jurisdiction rested with federal question jurisdiction pursuant to 28 U.S.C. § 1331:
 

 Typically, all cases arising under the Social Security Act are channeled through the appropriate administrative fora before they reach federal court; [42 U.S.C. § 405(h) ] forbids federal suits that have not been administratively reviewed first. But where there is no appropriate administrative forum, it makes no sense to bar federal suit. We presume, after all, that Congress did not intend to foreclose all avenues of judicial review. Thus, section 405(h)’s bar to federal question jurisdiction “does not apply ... where application of § 405(h) would not simply channel review through the agency, but would mean no review at all.”
 

 If we were to conceive of Binder’s claims as arising under the Social Security Act, then section 405(h) would appear to foreclose all judicial review of the agency’s policy because Binder, as a non-party in the administrative proceedings, likely cannot seek review under
 
 *148
 
 section 405(g). Thus, under the
 
 Illinois Council
 
 rule, federal question jurisdiction under section 1331 may be available after all.
 

 Id.
 
 at 130-31 (quoting
 
 Shalala v. Ill. Council on Long Term, Care,
 
 529 U.S. 1, 19, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000)) (internal citations omitted).
 

 Finally, this Court discussed a third possible source of jurisdiction—mandamus jurisdiction,
 
 see
 
 28 U.S.C. § 1361. We noted that while mandamus review may be used to compel an officer or employee of the United States to perform a duty owed to the plaintiff,
 
 Binder I,
 
 399 F.3d at 133 (citing 28 U.S.C. § 1361), the SSA had already paid Binder in this case, and Binder’s prospective relief was entirely declaratory. We observed that there appeared to be no duty to “compel,” and it was therefore not clear whether mandamus could provide a source of federal jurisdiction on the peculiar facts of this case.
 
 See id.; see also Wilbur v. United States ex rel. Kadrie,
 
 281 U.S. 206, 218, 50 S.Ct. 320, 74 L.Ed. 809 (1930).
 

 Accordingly, we remanded the case to the District Court for consideration, in the first instance, of the issue of subject matter jurisdiction because “jurisdiction is so intimately intertwined with questions about the nature of Binder’s claims— claims with which the District Court is far more familiar.”
 
 Id.
 
 at 133. We also encouraged the District Court to feel free to revisit its original ruling in light of
 
 Washington State Department of Social & Health Services v. Guardianship Estate of Keffeler,
 
 537 U.S. 371, 382-83, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2003), which interpreted the “other legal process” language of section 407(a) in regard to the alienation of Social Security benefits.
 
 Binder I,
 
 399 F.3d at 133-34.
 

 Following remand, the District Court, held that Binder’s alleged charging lien was not “other legal process,” as that term is used in § 407 of the Act.
 
 Binder & Binder, P.C. v. Jo Anne Barnhart, Comm’r of Soc. Sec. Admin.,
 
 No. 02-cv-2972, at 5-6 (E.D.N.Y. Aug. 18, 2005) (internal citations omitted). Referring to its original decision granting summary judgment, the District Court stated as follows: “By granting summary judgment in favor of the SSA, this [cjourt was in effect saying that Binder has no claim and thus Binder does not have federal subject matter jurisdiction.”
 
 Id.
 

 By notice of appeal dated September 17, 2005, Binder timely appealed to this Court from the August 18, 2005 judgment of the District Court.
 

 DISCUSSION
 

 I.
 
 Standard of Review
 

 In this case, the District Court first granted summary judgment to the SSA and, on remand, dismissed the action for lack of subject matter jurisdiction. “The standard applicable to a motion for summary judgment, resolution of which [this Court reviews] de novo, is a familiar one. Summary judgment shall be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.”
 
 Powell v. Nat’l Bd. of Med. Examiners,
 
 364 F.3d 79, 84 (2d Cir.2004);
 
 see
 
 Fed.R.Civ.P. 56(c). All reasonable inferences must be construed in the nonmoving party’s favor, and if “there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party’s] favor may be drawn, the moving party simply cannot obtain a summary judgment.”
 
 R.B. Ventures, Ltd. v. Shane,
 
 112 F.3d 54, 59 (2d Cir.1997) (citations and internal quotation marks omitted; alteration in original). A district court’s dismissal of a case for lack of subject matter jurisdiction is also re
 
 *149
 
 viewed by this Court de novo.
 
 Oscar Grass & Son, Inc. v. Hollander,
 
 337 F.3d 186, 192 (2d Cir.2003).
 

 II.
 
 Subject Matter Jurisdiction
 

 Binder now claims that there are three possible sources of subject matter jurisdiction: federal question jurisdiction,
 
 see
 
 29 U.S.C. § 1331; mandamus,
 
 see
 
 28 U.S.C. § 1361; and the judicial review provision of the Act,
 
 see
 
 42 U.S.C. § 405(g).
 

 Under § 405(g):
 

 Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was
 
 a party,
 
 irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia.
 

 42 U.S.C. § 405(g) (emphasis supplied). We suggested in
 
 Binder I
 
 that this section is “seemingly inapplicable to Binder’s suit because [it] limits judicial review to those decisions involving ‘a party.’ ”
 
 Binder I,
 
 399 F.3d at 130 (citing
 
 Cordoba v. Massanari,
 
 256 F.3d 1044, 1047 (10th Cir.2001)). We now so hold: because Binder was not a party in the proceedings before the SSA, it cannot avail itself of section 405(g).
 

 Normally, Section 405(h) channels all challenges that “arise under” the Act through the proper administrative proceedings by forbidding federal suits that have not been administratively reviewed first.
 
 See
 
 42 U.S.C. § 405(h) (“The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28_”). Thus, as we explained in
 
 Binder I,
 
 federal question jurisdiction does not generally lie under section 28 U.S.C. § 1331 for suits brought under the Social Security Act, even if they raise constitutional questions.
 
 See Ill. Council,
 
 529 U.S. at 10-15, 120 S.Ct. 1084;
 
 Heckler v. Ringer,
 
 466 U.S. 602, 614-16, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984);
 
 Mathews v. Eldridge,
 
 424 U.S. 319, 326-32, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976);
 
 Weinberger v. Salfi,
 
 422 U.S. 749, 760-61, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).
 

 Judicial review is available to a plaintiff under 28 U.S.C. § 1331, however, where, as here, there are no alternative means to review a federal claim arising under the Social Security Act.
 
 See Ill. Council,
 
 529 U.S. at 19, 120 S.Ct. 1084 (suggesting that § 405(h) does not bar federal question jurisdiction “where application of § 405(h) would not simply channel review through the agency, but would mean no review at all” (interpreting
 
 Bowen v. Mich. Acad. of Family Physicians,
 
 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986)));
 
 Fanning v. United States,
 
 346 F.3d 386, 399 (3d Cir.2003) (“[T]he Court in
 
 Illinois Council
 
 seemed to read
 
 Michigan Academy
 
 as creating an exception to the channeling requirement of § 405(h) in those cases where no judicial review is available at all.”);
 
 Buchanan v. Apfel,
 
 249 F.3d 485,
 
 *150
 
 490 (6th Cir.2001) (“The language of § 405(h) indicates that Congress never contemplated a situation where someone other than a party pursuing entitlement benefits would seek a review of a color-able claim that the Commissioner engaged in a statutory or constitutional violation. In addition, there is no clear and convincing evidence that Congress intended to deny a judicial forum for such a claim.”);
 
 Furlong v. Shalala,
 
 238 F.3d 227, 233-34 (2d Cir.2001) (“Whatever else the
 
 Illinois Council
 
 Court may have intended to do with respect to the recognition of federal court jurisdiction over Medicare challenges, it clearly stated ... that courts should not interpret [§ 405(h) ] as requiring such a problematic foreclosure of review in all circumstances.”);
 
 see also Binder I,
 
 399 F.3d at 131 (same).
 

 We suggested in our prior opinion that “[i]f one conceives of Binder’s claims (both constitutional and statutory) as arising out of property rights created by section 406 of the Act, then there probably is federal jurisdiction.”
 
 Binder I,
 
 399 F.3d at 133. Upon further review, we conclude that this is the best way to characterize Binder’s claims for relief and that we do indeed have jurisdiction to consider them. Specifically, we now hold that Binder may invoke federal question jurisdiction under 28 U.S.C. § 1331 because, were such jurisdiction unavailable, it would be unable to obtain any judicial review of its claims under the Act.
 

 III.
 
 The SSA’s Authority to Pay Attorneys’ Fees
 

 Under the Social Security Act, “whenever the [SSA], in any claim before the [SSA] for benefits ... makes a determination favorable to the claimant, the [SSA]
 
 shall ... fix
 
 ... a reasonable fee to compensate such attorney for the services performed by him in connection with [the awarded] claim [for benefits],” or approve or modify a pre-existing fee agreement between the claimant and her attorney. 42 U.S.C. § 406(a)(1), (a)(2)(A) (emphasis supplied). If the claimant is awarded “past-due” benefits, the SSA
 
 “shall ... certify for
 
 payment out of such past-due benefits ... to such attorney an amount equal to so much of the maximum fee as does not exceed 25 percent of such past-due benefits.” 42 U.S.C. § 406(a)(4) (emphasis supplied).
 

 Binder claims that § 406 creates a charging lien under New York Judiciary Law § 475 that survived Delnegro’s bankruptcy discharge; however, we already stated in
 
 Binder I
 
 that “neither the bankruptcy court’s discharge, nor the procedures that the court did or did not employ, is on appeal. The Bankruptcy Court is not in this Circuit. If Binder believes that it was not afforded due process in the Bankruptcy Court, its recourse is to move to reopen the bankruptcy.”
 
 Binder I,
 
 399
 
 F.3d
 
 at 131 (citing 11 U.S.C. § 350(b)). Thus, the issue of the effect of the Bankruptcy Court’s discharge order on Binder’s alleged charging lien is not properly before us. Similarly, because we do not reach the issue of whether Binder’s charging lien survived the bankruptcy discharge, we do not address whether 42 U.S.C. § 407(a), which sets forth the Act’s anti-alienation provision as to benefits awarded under the Act, includes a statutorily created attorneys’ charging lien within its definition of “other legal process.” 42 U.S.C. § 407(a).
 

 For the purposes of this appeal, we need not fully resolve Binder’s claim to a property interest in the contested funds and instead examine only whether the SSA had any authority to take the action it did — the demand for return of the monies paid to Binder. We are unable to identify any authority for the SSA to decline to certify
 
 *151
 
 the payment because of its own agency determination that the fee was discharged in bankruptcy. The Social Security Act by its terms does not authorize the SSA to enforce discharges in bankruptcy or make any determination as to attorneys’ fees other than in accordance with its statutory authority to fix the fees of claimant’s attorneys and to withhold and transmit the fees so fixed. The plain language of § 406(a)(4) admits of no exceptions in this regard.
 

 In this case, the SSA authorized payment for 22.75 hours of work performed by Binder on Delnegro’s behalf. The SSA recognized the amount of work completed and determined that Binder was entitled to payment for that work. Absent a showing that the portion of the total past-due benefits to which Binder is entitled is an unreasonable attorneys’ fee,
 
 see Wells v. Sullivan,
 
 907 F.2d 367 (2d Cir.1990), and there was no such showing or determination here, the SSA had a statutory duty under the Act to pay Binder the certified fee.
 

 We need not decide, however, whether the Act would preclude the SSA from promulgating a regulation or otherwise formally adopting a policy to act consistently as it did in this case. It suffices for now that the SSA has not yet done so. The SSA may not rely on its Program Circular—an internal document that “was prepared by a former Reconsideration Reviewer for use in [a] ... training manual.” Even if the Program Circular were more than an internal training document and actually part of the SSA’s Program Operations Manual System (“POMS”), it still would not constitute properly enacted policy or have the force of law.
 
 See Tejada v. Apfel,
 
 167 F.3d 770, 775 (2d Cir.1999) (holding that “POMS guidelines ‘ha[ve] no legal force, and [they] do[] not bind the [Commissioner].’ ” (alteration in original) (quoting
 
 Schweiker v. Hansen,
 
 450 U.S. 785, 789, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981)));
 
 see also
 
 United States of America SOCIAL SECURITY ADMINISTRATION, SOCIAL SeCUrity Online, SoCial Security Program Rules Home Page, Employee Operating INSTRUCTIONS, PROGRAM OPERATIONS MANUAL System http://www.ssa.gov/regulations (last visited Feb. 21, 2007) (click on “Program Operations Manual System”) (stating by way of disclaimer that “[t]he POMS states only internal guidance. It is not intended to, does not, and may not be relied upon to create any rights enforceable at law by any party in a civil or criminal action.”).
 

 A POMS entry might arguably be evidence of the SSA’s public construction of its authorizing statute or the Commissioner’s own regulations, a construction that, if consistent with that statute, would be entitled to some level of deference.
 
 See, e.g., Warre v. Comm’r of Soc. Sec. Admin.,
 
 439 F.3d 1001, 1005 (9th Cir.2006);
 
 Oteze Fowlkes v. Adamec,
 
 432 F.3d 90, 97 (2d Cir.2005);
 
 Pappas v. Bowen,
 
 863 F.2d 227, 230 (2d Cir.1988). In this case, however, there is nothing to which to defer. Nothing in the Program Circular states any legal basis for believing that the SSA may, let alone must, take the action in question in this case. Nor is there any sort of policy rationale to support its position. In brief, there is nothing in the Program Circular apart from conclusory statements suggesting that paying the attorneys’ fees owed to Binder in this case would somehow be unlawful.
 

 The SSA has suggested in its brief and at oral argument that paying Binder would force the Commissioner to disregard Bankruptcy Court orders. However, the Bankruptcy Court orders in this case have given no directive to the SSA. Nor is there reason to conclude that the SSA’s demand for return of the $1,200 from Binder was
 
 *152
 
 compelled by any other law. Indeed, at least one court has approved an attorneys’ fee award during the pendency of a claimant’s bankruptcy, it there appearing that the agency did not then object to the propriety of this action.
 
 See Dawes v. Sullivan,
 
 768 F.Supp. 1328, 1330 (D.Ariz.1991).
 

 We simply find no authority for the SSA to interpret and apply bankruptcy law or to enforce the orders of the Bankruptcy Court, and we hold that, in the absence of such authority, the SSA’s unambiguous and limited duty was to certify for payment to Binder the firm’s reasonable fee. The SSA has performed that function, and payment has been made to Binder. Whether Binder is obligated to pay the money to Delnegro by operation of bankruptcy law is a matter that does not properly concern the SSA.
 
 [3]
 
 If Delnegro seeks to have the $1,200 returned to her, she must take this issue to the Bankruptcy Court, where Binder may again raise his due process, or any other, concerns with that court and may properly file an appeal from any future judgment of the Bankruptcy Court.
 
 [4]
 

 CONCLUSION
 

 Vacate the judgment of the District Court and remand for proceedings consistent with the foregoing.
 

 [1]
 

 . Section 475 states, in full:
 

 From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client’s cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client’s favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.
 

 [2]
 

 . Under 42 U.S.C. § 407(a), "[t]he right of any person to any future payment [of SSA disability benefits] ... shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under [the Act] shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."
 

 [3]
 

 . Nor need we reach the issue of whether Binder has a property interest in the money and, if so, when that interest arises. For the purposes of this appeal, it is enough to hold, as we do, that the SSA lacked authority to deviate from the procedure outlined in § 406(a)(4) of the Act.
 

 [4]
 

 . Although the SSA raises the defense of sovereign immunity as to Binder's claims, our conclusion that the SSA had the duty to pay Binder the certified fee dispels the need for us to address this defense.