NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 26, 2013[*]
Decided November 26, 2013

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 13-1421

| | |
|---|---|
| BARBARA D. FLINT, | Appeal from the United States District |
|    *Plaintiff-Appellant,* | Court for the Southern District of Indiana, |
| | Indianapolis Division. |
|    *v.* | |
| | No. 1:11-cv-01480-MJD-TWP |
| CAROLYN W. COLVIN, | |
| Acting Commissioner of Social Security, | Mark J. Dinsmore, |
|    *Defendant-Appellee.* | *Magistrate Judge.* |

**O R D E R**

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. The appeal is thus submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

Barbara Flint claims that she is disabled by fibromyalgia. An administrative law judge denied her application for benefits, disbelieving her assertions about the severity of her symptoms. The denial was upheld by the district court, and we affirm.

Shortly before turning 51, Flint applied to the Social Security Administration for supplemental security income based on her fibromyalgia. (Fibromyalgia—typified by painful, tender spots all over the body—has unknown and mysterious causes. *See Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 916 (7th Cir. 2003); *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996).) Flint reported intermittent but acute pain in her neck, shoulders, arms, back, hips, and legs (making it difficult to walk, sit, or lift heavy objects), as well as fatigue and diarrhea. Her medical records also reflect diagnoses of carpal tunnel syndrome and degenerative spinal disc disease.

At the hearing before the ALJ, Flint explained the lengths she went to treat her conditions and the daily activities she was able to perform. She testified that once or twice a week she took prescription-strength Ibuprofen or over-the-counter Tylenol for her pain and had sought out a chiropractor and a physical therapist. Though an orthopedist prescribed stretching, exercise, and additional physical therapy, she admitted that she had the energy only to briefly stretch in the morning. Flint also testified that she cared full-time for her husband, a stroke survivor. When the ALJ asked about the division of household chores, Flint and her husband (who also testified) explained that neither could do everything on his or her own: she did the laundry; he folded the clothes; she cooked and washed dishes; he made the bed and swept the floor.

Both the ALJ and Flint questioned a vocational expert about available jobs. The ALJ asked the vocational expert whether jobs were available to someone who could lift or carry only 10 pounds frequently and 20 occasionally, stand or walk for six hours, sit for six hours, needed "reasonable access to a bathroom," and needed to avoid exposure to vibration. In the expert's opinion, such a person could work at a fast-food restaurant or as a waitress or cashier. When questioned by Flint, the expert elaborated that those jobs could not be performed by someone who once or twice a week has urgent diarrhea and "can't wait" to go to the bathroom.

The ALJ concluded that Flint was not disabled. Applying the familiar five-step evaluation, *see* 20 C.F.R. § 404.1520(a)(4), the ALJ concluded that (1) Flint had not worked since she applied for supplemental income; (2) she was impaired by fibromyalgia, irritable bowel syndrome, degenerative disc disease, and carpal tunnel syndrome; (3) her impairments did not equal impairments listed in the regulations;

(4) she had the residual functional capacity to perform light work with limitations on lifting, walking, and sitting, with access to a bathroom and without vibration; and (5) she could work as a fast-food worker, waitress, or cashier. In determining Flint's RFC, the ALJ stated that Flint was "not a fully credible witness" and that she did not believe that Flint's symptoms were as severe as she represented. The ALJ noted that, despite her assertions of debilitating pain, Flint's treatment (physical therapy, chiropractic services, and Ibuprofen and Tylenol) had been "rather routine and conservative" and, despite her doctor's orders to exercise, Flint said that she only stretched. The ALJ also noted that Flint's full-time care for her husband belied her claim that she could not work at all.

After the Appeals Council denied review, the district court (a magistrate judge presiding with consent) upheld the agency's denial of benefits.

Flint now challenges the ALJ's credibility finding, contending that the ALJ did not sufficiently inquire into her caregiving role or why she failed to follow her orthopedist's directions and took only mild pain medications. We agree with Flint that the ALJ should have asked her why she took only Ibuprofen and Tylenol (whether she had financial constraints, for example), *see* S.S.R. 97-7p, 1996 WL 374186, at *7 (July 2, 1996); *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012), but this oversight does not undermine the ultimate credibility finding because the ALJ's other reasons for disbelieving Flint were valid, *see McKinzey v. Astrue*, 641 F.3d 884, 890–91 (7th Cir. 2011). First, the ALJ properly noted the inconsistency between, on the one hand, Flint's testimony that she was able to care full-time for her husband and perform some household chores and, on the other hand, her claim that her pain and other symptoms prevented her from working. Similarly, the ALJ appropriately questioned the genuineness of her complaints of pain, given her admission that she had not followed her doctor's recommended exercise regimen.

Flint also contends that the ALJ's questioning of the vocational expert about the availability of jobs for someone with her conditions failed to fully account for her chronic diarrhea and her inability to lift, carry, stand, and walk normally. The ALJ, however, did introduce qualifications and limitations into the hypothetical scenario she presented to the VE, so Flint's real disagreement is with the ALJ' decision not to fully credit her testimony about her symptoms' severity. But as we already have explained, the ALJ's credibility determination was defensible, and the ALJ was not required to construct or consider hypotheticals based on testimony she chose not to fully credit.

*Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009); *Schmidt v. Astrue*, 496 F.3d 833, 845–46 (7th Cir. 2007).

Finally, Flint asserts that the Program Operations Manual (which guides SSA employees on processing disability claims) requires a new RFC assessment at each "adjudicative level," including the district court. But the Manual is for the internal use of agency employees, has no legal force, and cannot bind the agency, let alone the district court. *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981); *Pulley ex rel. Pulley v. Bowen*, 817 F.2d 453, 454 (7th Cir. 1987); *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 151 (2d Cir. 2007).

AFFIRMED.