§§ 404.1725(b) and 416.1525(b).  Given the amount of time that Buchanan spent on the cases in question, his awarded fees were quite low (in one case allegedly as low as $5.50 per hour, even after a small post-suit increase by the ALJ), and Buchanan's clients expressly agreed to fees that were much higher than those awarded by the Commissioner.  So despite our lack of jurisdiction to pass on the reasonableness of any fee awarded to Buchanan at the administrative level, *see McCarthy v. Sec'y of Health & Human Servs.*, 793 F.2d 741, 742-43 (6th Cir. 1986), we do have jurisdiction to consider whether the Commissioner has failed to comply with his own regulations.  We accordingly hold that mandamus jurisdiction is available for Buchanan's claim.

### III.  CONCLUSION

For all the reasons set forth above, we **AFFIRM** the judgment of the district court with respect to the lack of federal-question jurisdiction under 28 U.S.C. § 1331, but **REVERSE** and **REMAND** the case with respect to Buchanan's claim under the mandamus statute, 28 U.S.C. § 1361.  On remand, the district court is instructed to give Buchanan the opportunity to establish the merits of his claim, which the Commissioner can then challenge by a motion for summary judgment, by proceeding to trial, or both.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2001 FED App. 0138P (6th Cir.)
File Name:  01a0138p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DALE BUCHANAN,
        *Plaintiff-Appellant,*

        v.

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL
SECURITY,
        *Defendant-Appellee.*

No. 00-5053

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
Nos. 97-00584; 98-00180—R. Allan Edgar,
Chief District Judge.

Argued:  March 16, 2001

Decided and Filed:  April 27, 2001

Before:  COLE and GILMAN, Circuit Judges; ALDRICH,[*]
District Judge.

---

[*]The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

---

**COUNSEL**

---

**ARGUED:** Eric L. Buchanan, DALE BUCHANAN & ASSOCIATES, Chattanooga, Tennessee, for Appellant. Charlotte M. Connery-Aujla, OFFICE OF THE GENERAL COUNSEL, Baltimore, Maryland, for Appellee. **ON BRIEF:** Eric L. Buchanan, DALE BUCHANAN & ASSOCIATES, Chattanooga, Tennessee, for Appellant. Charlotte M. Connery-Aujla, OFFICE OF THE GENERAL COUNSEL, Baltimore, Maryland, for Appellee.

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge. Dale Buchanan represented five individuals in successful claims for back benefits before the Commissioner of Social Security. When he sought approval of the attorney fees specified in the contracts with his clients, however, the Commissioner determined that Buchanan was limited to receiving sums equal to exactly 25 percent of the claimants' back benefits, rather than the alternate minimum fees agreed upon with his clients. Buchanan challenged, on statutory and constitutional grounds, the method used by the Commissioner to determine those fees, arguing that the Commissioner was improperly placing a flat cap on fee awards. The district court concluded that it had no subject-matter jurisdiction to review Buchanan's claims. For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

## I. BACKGROUND

Three of the five clients in question (Christine Anderson, Samuel Hall, and Wanda Roach) entered into contingency fee contracts with Buchanan regarding their claims for Supplemental Security Income (SSI) and disability insurance

maintains that Buchanan has failed to satisfy the second requirement for asserting mandamus jurisdiction, because the determination of what constitutes a reasonable attorney's fee is within the Commissioner's sole discretion.

Buchanan responds by arguing that the Commissioner has neglected his clear, nondiscretionary duty to follow both case law and his own administrative regulations. In particular, Buchanan argues that *Horenstein v. Secretary of Health & Human Services*, 35 F.3d 261 (6th Cir. 1994), bars the Commissioner from relying solely upon a 25 percent cap on attorney fees resolved at the administrative level, and that 20 C.F.R. §§ 404.1725(b) and 416.1525(b) require the Commissioner to consider several other factors in arriving at a reasonable attorney's fee.

We find Buchanan's argument persuasive. This court expressly held in *Horenstein* that the statute governing the award of attorney fees in Social Security cases resolved at the administrative level did not cap the amount that could be awarded at 25 percent of the past-due benefits recovered by the claimant. *See Horenstein*, 35 F.3d at 262. In doing so, this court stated that "the Secretary [of Health and Human Services] is free to set a reasonable fee, except as otherwise provided in the statute." *Id.* The determination of reasonable attorney fees, in turn, is governed by 20 C.F.R. § 404.1725(b) with respect to SSI, and by 20 C.F.R. § 416.1525(b) with respect to disability-insurance benefits. These regulations require various factors to be considered in determining the amount of attorney fees awarded, including the "amount of time the representative spent on the case," §§ 404.1725(b)(1)(iv) & 416.1525(b)(1)(iv), and the "amount of fee the representative requests for his or her services, including any amount authorized or requested before." § 404.1725(b)(1)(vii) & 416.1525(b)(1)(vii).

The use of a blanket fee cap such as that alleged by Buchanan would be a violation of the Commissioner's duties, because such a cap cannot be reconciled with the full consideration of the factors specified in 20 C.F.R.

*Sec'y of Health & Human Servs.*, 793 F.2d 741, 742-43 (6th Cir. 1986). Moreover, the challenged action — the Commissioner's imposition of a flat cap on attorney-fee awards — was not so extreme as to constitute an egregious abuse of power. *See Pusey*, 11 F.3d at 657 (finding no substantive due-process violation where a prosecutor failed to inform the plaintiff that the charges against the killer of the plaintiff's son might be reduced, because "the use of the 'shocks the conscience' test is problematic in areas other than excessive force"). We therefore conclude that Buchanan was not denied substantive due process.

### C.   Mandamus jurisdiction

Buchanan argues as an alternative that mandamus jurisdiction exists under 28 U.S.C. § 1361. This court has previously declined to make a determination on the issue of whether mandamus jurisdiction is available for claims arising under the Social Security Act. *See Mich. Ass'n of Homes & Servs. for the Aging, Inc. v. Shalala*, 127 F.3d 496, 503 (6th Cir. 1997) (concluding, in evaluating a Social Security Act claim, that "[i]t is not necessary for us to reach this question in the instant case"). The Supreme Court has likewise declined to decide whether 42 U.S.C. § 405(h) bars mandamus jurisdiction over claims arising under the Social Security Act. *See Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449, 456 n.3 (1999) (stating explicitly that the Court has "avoided deciding this issue in the past, and . . . again find[s] it unnecessary to reach it today" even though the government "urge[d the Court] to hold that mandamus is altogether unavailable to review claims arising under the Medicare Act") (internal citations omitted).

In order for the court to accept mandamus jurisdiction, Buchanan must show that (1) he has exhausted all available administrative remedies and (2) the Commissioner violated a "clear, nondiscretionary duty" owed to Buchanan. *See Heckler v. Ringer*, 466 U.S. 602, 616 (1984). Both parties acknowledge that Buchanan has exhausted all of his administrative remedies. The Commissioner, however,

benefits. Under these contracts, Buchanan was to receive either 25 percent of the claimants' back benefits or $1,500, whichever was greater, contingent on receiving favorable disability determinations from the Social Security Administration (SSA). He was to receive no fee if the claims were denied.

All three cases were successful, and the claimants were awarded the benefits that they sought, including back benefits. Because 25 percent of the back benefits in each case was less than $1,500, Buchanan subsequently submitted fee petitions to the Commissioner to request approval of the agreed-upon $1,500 in legal fees. The Commissioner denied these petitions. Instead, the Commissioner reduced the authorized fees to sums equal to exactly 25 percent of the claimants' back benefits. When Buchanan appealed the fee reductions, the Regional Chief Administrative Law Judge (ALJ) affirmed the Commissioner's decisions.

The other two clients (Marjorie Collins and Jean Skelf) were also represented by Buchanan before the Commissioner. Both clients had signed contingency fee contracts similar to those described above, with Collins agreeing to a minimum fee of $1,000 and Skelf to a minimum fee of $1,500. These two cases, like the others, were successful, but Buchanan's fees were again limited to exactly 25 percent of the claimants' back benefits.

Before the administrative appeals on the fee awards for the Collins and Skelf cases were finalized, Buchanan sued the Commissioner in the district court concerning all five awards. The ALJ amended the attorney fees awarded for the Collins and Skelf cases after Buchanan filed his complaint. These amended fee awards were slightly higher than the initial 25 percent figures, but still well below the amounts specified in Buchanan's contracts. In fact, even after the ALJ's adjustments, Buchanan's effective hourly rate in the five cases ranged from a low of $5.50 per hour to a high of $44.31 per hour.

Buchanan then sought judicial review of the attorney-fee determinations. He challenged, on statutory and constitutional grounds, the method used by the Commissioner to determine those fees. The crux of his complaint was that the Commissioner was limiting all attorney-fee awards to exactly 25 percent of the back pay awarded to the claimants, and that this flat limitation constituted a denial of due process of law, as well as a violation of the applicable federal statute and SSA regulations. Buchanan pointed out that there is no fixed limit on the fee that an attorney may charge under 42 U.S.C. § 406(a)(1), and that SSA regulation 20 C.F.R. § 404.1725(b) and disability insurance regulation 20 C.F.R. § 416.1525(b) require the Commissioner to weigh certain specified factors in calculating attorney-fee awards. These factors include the complexity of the case, the amount of time the attorney spent on the case, and the fee amount agreed upon between the attorney and the client. Buchanan also addressed the fee awards for Collins and Skelf, arguing that the ALJ changed the fee awards in these two cases by only a "token amount" in response to his initial complaint.

On February 11, 1999, the magistrate judge issued a Report and Recommendation, concluding that although the district court had no jurisdiction to review the reasonableness of the attorney fees, it did have jurisdiction to hear Buchanan's statutory and constitutional claims concerning the Commissioner's method of determining those fees. The magistrate judge also concluded that the district court had subject-matter jurisdiction over this case under the federal mandamus statute.

These conclusions, however, were rejected by the district court, which granted the Commissioner's motion to dismiss for lack of subject-matter jurisdiction. *See Buchanan v. Apfel*, 69 F. Supp. 2d 996 (E.D. Tenn. 1999). The district court specifically held that Buchanan had failed to present a constitutional claim because he was not entitled to anything more than the fees determined to be reasonable by the Commissioner. Alternatively, the court held that even if Buchanan had presented a colorable constitutional challenge,

however, or even a property interest in reasonable attorney fees, because Buchanan fails to fulfill the second requirement for a procedural due-process challenge. Under this requirement, we must examine whether "the procedures attendant upon [the] deprivation [of a liberty or property interest] were constitutionally sufficient." *Pusey v. City of Youngstown*, 11 F.3d 652, 656 (1994). Here, we find that the procedures applicable to Buchanan were indeed constitutionally sufficient. Buchanan received notice of his initial fee determination and was afforded the opportunity to appeal the determination through administrative review. He even received a review of the fee determination by the Regional Chief ALJ, a review that awarded Buchanan additional fees in two of the five cases. Other circuits have accepted such procedures in Social Security Act cases as comporting with procedural due process, *see Moyer*, 124 F.3d at 1380 (citing *Copaken v. Sec'y of Health, Educ., & Welfare*, 590 F.2d 729, 731-32 (8th Cir. 1979)), and so do we.

### 3. *Substantive due process*

Substantive due process claims are usually divided into two main categories: (1) claims asserting the deprivation of a particular statutory or constitutional right, privilege, or immunity, and (2) claims alleging an egregious, arbitrary abuse of government power that "shocks the conscience." *See Pusey*, 11 F.3d at 656-57. In finding that Buchanan's property rights were not infringed, the district court concluded that "while Buchanan may have been deprived of additional income to which he was entitled, this deprivation does not rise to the level of a protected property interest under the Constitution." *Buchanan*, 69 F. Supp. 2d at 1001.

We agree that Buchanan's substantive due-process rights were not violated by the Commissioner's actions. Even if Buchanan could assert a deprivation of his property rights because the fees awarded to him were so low as to be unreasonable, this court has specifically stated that the reasonableness of the fee determination at the administrative level is beyond the review of this court. *See McCarthy v.*

the applicable federal statute precluded judicial review of attorney fees awarded by the Commissioner for work completed at the administrative level. Finally, the district court held that mandamus jurisdiction was not available to Buchanan because the Commissioner had no clear, nondiscretionary duty to weigh certain factors before arriving at the fee awards.

Buchanan's motion to reconsider and amend the judgment, filed pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, was denied on November 29, 1999. He timely filed his notice of appeal, challenging the district court's determination that it had no subject-matter jurisdiction over his claim.

## II. ANALYSIS

### A. Standard of review

"We review a district court's decision to grant a motion to dismiss for lack of subject matter jurisdiction de novo." *Joelson v. United States*, 86 F.3d 1413, 1416 (6th Cir. 1996). A motion to dismiss under Rule 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In considering the motion, we must accept all factual allegations in the complaint as true. *See Gao v. Jenifer*, 185 F.3d 548, 552 (6th Cir. 1999).

### B. Federal-question jurisdiction

#### 1. *42 U.S.C. § 405(h)*

The Commissioner argues that 42 U.S.C. § 405(h) precludes federal-question jurisdiction over Buchanan's claim. Section 405(h) governs the "[f]inality of the Commissioner's decision" on claims arising under the Social Security Act, channeling them through the review procedures provided in § 405(g). Specifically, § 405(h) states:

determinations, as opposed to precluding review of challenges to the individual fee determinations themselves. Accordingly, we are of the opinion that § 405(h) does not preclude Buchanan's claim.

Buchanan asserts that this court has federal-question jurisdiction because he raises two constitutional challenges—a procedural due-process challenge and a substantive due-process challenge. Each of these challenges will be addressed in turn.

### 2. *Procedural due process*

The first step in analyzing Buchanan's procedural due-process challenge is to determine whether he has a property or liberty interest with which the Commissioner has interfered. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). Buchanan argues that he had a property interest in receiving the attorney fees that were specified in his contracts with his clients — the greater of either an agreed-upon flat sum or 25 percent of collected back pay. *See Mertik v. Blalock*, 983 F.2d 1353, 1360 (6th Cir. 1993) (stating that a "private contractual right can constitute a property interest entitled to due process protection from governmental interference under federal constitutional law").

The Commissioner, however, points out that Buchanan's clients agreed to pay him "no more than the fee[s] authorized by the Social Security Administration." This contractual language, argues the Commissioner, removes any property interest that Buchanan might have had in the actual fees specified in his contracts. In addressing similar cases, other circuits have held that an "attorney who must seek regulatory approval of the reasonableness of his fee has a property interest only in a reasonable fee, not the amount specified in a fee contract." *Moyer v. Dir., Office of Worker's Comp. Programs*, 124 F.3d 1378, 1379-80 (10th Cir. 1997) (citing *Thomason v. Schweiker*, 692 F.2d 333, 336 (4th Cir. 1982)).

We need not resolve whether Buchanan had a property interest in the exact fees agreed upon in his contracts,

The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

In *Heckler v. Ringer*, 466 U.S. 602, 615 (1984), the Supreme Court held that the final  sentence of § 405(h) provides that § 405(g), to the exclusion of the federal-question-jurisdiction statute, is the "sole avenue for judicial review for all claims arising under the Medicare Act." *Ringer*, 466 U.S. at 615 (holding that the district court did not have subject-matter jurisdiction under 28 U.S.C. § 1331 over a claim arising under the Social Security Act). *Ringer* did not purport to encompass all causes of action under the Act, but instead involved specific claims where administrative "exhaustion [wa]s in no sense futile" for the plaintiffs. *Id.* at 618.

The importance of the availability of judicial review was later emphasized in *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986), *superceded by statute on other grounds as recognized by Farkas v. Blue Cross & Blue Shield of Mich.*, 24 F.3d 853, 860 (6th Cir. 1994), where various doctors challenged the statutory and constitutional validity of certain regulations promulgated under Part B of the Medicare Act. At issue in *Michigan Academy* was whether 42 U.S.C. § 405(h) (which was made applicable to the Medicare Act by 42 U.S.C. § 1395ii) or 42 U.S.C. § 1395ff(b) (a then-existing provision in the Medicare Act that was similar to § 405(h)) precluded federal-question jurisdiction under 28 U.S.C. § 1331. The Court first stressed the "strong presumption" that judicial review is available for administrative actions. *Id.* at 670. It then found, after analyzing the finality provisions, that no clear and convincing

evidence existed to establish any congressional intent to bar judicial review of challenges to regulations promulgated under Part B of the Medicare Act, despite the express preclusion of judicial review over the amount of benefits under Part B. *See id.* at 676-81. On this basis, the Court rejected the government's argument that either § 405(h) or § 1395ff(b) precluded federal-question jurisdiction.

In *Shalala v. Illinois Council on Long Term Care, Inc.,* 529 U.S. 1 (2000), the Supreme Court elaborated on *Michigan Academy*, reading it as "more plausibl[y] . . . holding that § 1395ii does not apply § 405(h) where application of § 405(h) would not simply channel review through the agency, but would mean no review at all." *Id.* at 19. This court has construed *Michigan Academy* as providing an exception to *Ringer,* allowing judicial review unless there is clear and convincing evidence that Congress intended to deny such review. *See Ohio Hosp. Ass'n v. Shalala*, 201 F.3d 418, 424 (6th Cir. 1999) (holding that actions "which do not seek payment from the government and could not be brought under section 405 are therefore not barred by subsection 405(h)").

The *Michigan Academy* exception applies to Buchanan's challenge. Section 405(h), by its very terms, specifically applies to individuals "who were parties to" a hearing before the Commissioner. 42 U.S.C. § 405(h). The language of § 405(h) indicates that Congress never contemplated a situation where someone other than a party pursuing entitlement benefits would seek review of a colorable claim that the Commissioner engaged in a statutory or constitutional violation.

In addition, there is no clear and convincing evidence that Congress intended to deny a judicial forum for such a claim. It is true, as the district court pointed out, that Congress was aware of existing administrative regulations that prohibited review of all fee determinations made by the Commissioner. *See Buchanan*, 69 F. Supp. 2d at 1002. But such evidence is ambiguous as to whether Congress intended to preclude review of challenges to the methods used in making those fee