The **COHN LAW FIRM** and **William A. Cohn, Plaintiffs,**

v.

**Michael A. ASTRUE, Commissioner of Social Security, Defendant.**

No. 10–2957–JDT–egb.

United States District Court,
W.D. Tennessee,
Western Division.

May 1, 2013.

---

William A. Cohn, The Cohn Law Firm, Cordova, TN, for Plaintiffs.

Monica M. Simmons–Jones, U.S. Attorney's Office, Memphis, TN, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

JAMES D. TODD, District Judge.

Plaintiffs William A. Cohn and the Cohn Law firm [1] filed this action against Defendant Commissioner of Social Security. Plaintiffs contend that Defendant Commissioner (1) did not disburse attorney fees as ordered by agency administrative law judges ("ALJs"); (2) improperly withheld attorney fees from back payments awarded to their clients; (3) should have withheld all of the fees that the ALJs ordered; (4) violated regulations and public policy by not processing Plaintiffs' fee petitions; and (5) did not properly adjudicate fee requests by treating contingency fee contracts as if they were non-contingent contracts. Plaintiffs seek an order under the Mandamus Act, 28 U.S.C. § 1361, to require the Commissioner to issue attorney fee payments allegedly due to them under Section 206(a) of the Social Security Act, 42 U.S.C. § 406(a).[2]

Defendant Commissioner has filed a motion for summary judgment [DE# 58], and Plaintiffs have filed a cross motion for summary judgment [DE# 64]. The matter has been fully briefed by the parties. For the reasons set forth below, Defendant's motion is GRANTED, and Plaintiffs' motion is DENIED.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Revised Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed" is required to support that assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials;[ [3] ] or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

---

**1.** Plaintiffs are an attorney and the sole proprietorship law firm that he established.

**2.** On August 22, 2011, this court found that Plaintiffs had stated a claim under the Mandamus Act because the Commissioner owed a duty to pay any attorney fees "that are actually owed." [DE # 26 at p. 6]. The court explained that "Plaintiffs' 'clear right to relief' is the right to be paid correctly—not to be paid any certain amount." However, the court's jurisdiction is limited to considering whether the Commissioner failed to comply with his own regulations. *Id.*

**3.** "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2). Additionally, Rule 56(c)(4) specifically provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the district court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials— including the facts considered undisputed—show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed.R.Civ.P. 56(e).

In *Celotex Corp.,* the Supreme Court explained that Rule 56:

mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

477 U.S. at 322–23, 106 S.Ct. 2548. In considering whether to grant summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986); *see also Matsushita Elec. In-*

*dus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (same).

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"

*Id.* at 252, 106 S.Ct. 2505; *see also Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348 ("When the moving party has carried its burden under Rule 56[ (a) ], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)). However, the court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. 2505. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

Plaintiffs allege two counts of the Commissioner's failure to perform a duty to pay attorney fees under 42 U.S.C. § 406(a). In count one, Plaintiffs allege that their "attorney fees were not paid according to the law" in certain of their cases. Since the filing of their complaint, Plaintiffs no longer seek recovery for attorney fees in twenty-six of those cases. *See* Def. Ex. 1, Cohn Depo. at 100–07, 119,

155–56, 170–74; Def. Ex. 2, Plaintiffs' Supplemental Discovery Responses, at 1–7.[4] In count two, Plaintiffs allege that the Commissioner failed to properly adjudicate Plaintiffs' attorney fee requests in the appeals process. They have identified one case in which the appeal of the fee determination was allegedly improper. *See* Def. Ex. 1, Cohn Depo. at 71, 73, 185; Amended Complaint at 10; Ex. 1 to Amended Complaint.

The Commissioner contends that, of the twenty-four cases that Plaintiffs have not withdrawn, there is no genuine issue of material fact as to whether he complied with his own regulations in setting the appropriate attorney fee and properly paying attorney fees actually owed in accordance with 42 U.S.C. § 406(a). Plaintiffs have responded that the Commissioner must submit proof of payment of those attorney fees in order to defeat summary judgment.

■ The Mandamus Act confers original jurisdiction on district courts of any action "in the nature of mandamus" to compel an officer, employee, or agency of the United States to perform a clear, non-discretionary duty owed to the plaintiff. *See Heckler v. Ringer*, 466 U.S. 602, 616, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) (citations omitted); *Buchanan v. Apfel*, 249 F.3d 485, 491–92 (6th Cir.2001). The "remedy of mandamus is a drastic one, to be invoked only in extraordinary circumstances." *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980). The party seeking mandamus has the "burden of showing that its right to issuance of the writ is 'clear and indisputable.'" *Gulfstream*

*Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988).

■ Although the Supreme Court has "declined to decide whether the third sentence of 42 U.S.C. § 405(h) bars mandamus jurisdiction over claims arising under the Social Security Act," *Ringer*, 466 U.S. at 616, 104 S.Ct. 2013, the Sixth Circuit has held that mandamus jurisdiction exists when the Commissioner has a non-discretionary duty to follow case law and regulations, not withstanding the provisions of 42 U.S.C. § 405(h). *Buchanan*, 249 F.3d at 492. Accordingly, a plaintiff may invoke the district court's power to issue a writ of mandamus by proving three elements: "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." *Carson v. United States Office of Special Counsel*, 633 F.3d 487, 491 (6th Cir.2011). For a writ of mandamus to be warranted, "there must be a mandatory or ministerial obligation. If the alleged duty is discretionary or directory, the duty is not owed." *Id.* at 495. "A duty is not owed unless the obligation is plainly defined and peremptory." *Id.*

■ A writ of mandamus is intended to provide a remedy only if the plaintiff has exhausted all other avenues of relief and the defendant owes the plaintiff a clear nondiscretionary duty. *Ringer*, 466 U.S. at 616–17, 104 S.Ct. 2013. Thus, jurisdiction to entertain a petition for its issuance cannot exist unless the plaintiff colorably demonstrates either that he has exhausted all other avenues of relief or that further exhaustion should be excused. *Slone v.*

---

**4.** The cases identified in count one that Plaintiffs no longer contest are: Holcomb, Cox, Brown, Tribble, Carter, Jackson, Adams, Davis, McKinnie, Stewart, Travis, Dodd, Barry, Carter, Fulton, Jones, Whitaker, Neal, Wright, Carson, Rodriguez, Adams, Cook, Lucas, Salim, and Spearman. *See* Def. Ex. 1, Cohn Depo. at 100–07, 119, 155–56, 170–74; Def. Ex. 2, Plaintiff Supp. Discovery Resp. at 1–7; Amended Complaint at 2–10.

*Sec'y of Health & Human Servs.*, 825 F.2d 1081, 1083 (6th Cir.1987).

### Count One

Of the twenty-three remaining cases in count one, Plaintiffs allege that, in fifteen of these cases (Allen, Brooks, Camper, Dyson, Gibson, Haun, Hill, L. Johnson, R. Johnson, King, McGuire, Morris, Pulliam, Riffe, and Tate, *see* Def. Ex. 2, Plaintiffs Suppl. Discovery Resp. at 1–6, 8), the Commissioner violated the Administrative Procedures Act ("APA") and the regulations promulgated under the APA, specifically 5 U.S.C. §§ 554(c), 556(b-d), 557(c), 3105 and 5 C.F.R. § 2423.31(a). *See* Def. Ex. 1, Cohn Depo. at 107–20, 131–32, 144–46, 149–55, 164–69, 174–75, 178–79; Def. Ex. 3, Plaintiffs' 2nd Supplemental Answers to Interrogatories, at 1–2. Plaintiffs do not allege that, in these fifteen cases, the Commissioner violated any of his own regulations.

In the remaining eight cases of count one (Forester, Gwaltney, Hinshaw, Lufcy, Thomas, Veasley, L. Wright, and York, *see* Def. Ex. 2, Plaintiffs Supp. Discovery Resp. at 4–6), Plaintiffs allege that the Commissioner did not properly pay attorney fees in accordance with 42 U.S.C. § 406(a).[5]

 Summary judgment is appropriate on count one concerning Plaintiffs' claims that the Commissioner violated the APA in fifteen cases because Plaintiffs have neither established that they are entitled to mandamus relief nor shown that the Commissioner has not complied with his own regulations in determining the correct attorney fee. Plaintiffs have acknowledged that, in these fifteen case, i.e., Allen, Brooks, Camper, Dyson, Gibson, Haun, Hill, L. Johnson, R. Johnson, King, McGuire, Morris, Pulliam, Riffe, and Tate, the Commissioner did not violate any of its own regulations. Instead, they merely assert that the Commissioner violated the APA and its regulations.

According to Plaintiffs, under the APA, "the general statutes [ ] give authority to [SSA's ALJ] to issue an order to the parties just like he has the right to make decisions and the parties are bound by those decisions. That's all it's about. ·It's nothing esoteric." Def. Ex. 1, Cohn Depo. at 109. Plaintiffs explain that "[t]he violation comes in not following the [ALJ's] order [regarding attorney fees]" and, if the Commissioner does not follow an ALJ order, he violates the APA. *Id.* at 111–12, 115, 118. Plaintiffs further assert that "to the extent the [APA] applies to Social Security[,] that would be the violation." *Id.* at 112–13.

Under *Buchanan v. Apfel,* mandamus jurisdiction is available to consider whether the Commissioner complied with his own regulations in setting an attorney fee. 249 F.3d at 492. ("[D]espite our lack of jurisdiction to pass on the reasonableness of any fee awarded … at the administrative level, … we do have jurisdiction to consider whether the Commissioner has failed to comply with his own regulations. We accordingly hold that mandamus jurisdiction is available."). Thus, a failure to comply with a particular APA provision or regulation does not entitle Plaintiffs to mandamus relief. *See id.; cf. Binder & Binder PC v. Barnhart,* 481 F.3d 141, 152 (2nd Cir.2007) (there is "no authority for the SSA to interpret and apply bankruptcy law or to enforce the orders of the Bankruptcy Court, and …, in the absence of such authority, the SSA's unambiguous

---

**5.** In his affidavit, Plaintiff William Cohn states that he "can find no record of payment." Affidavit, DE# 70, at p. 1. The fact that Plaintiffs can find no record of payment for attorney fees does not establish that the Commissioner did not pay those fees.

and limited duty [is] to certify for payment to [the representative seeking a fee under 42 U.S.C. § 406] [his] reasonable fee."). Because Plaintiffs cannot use the APA as a basis for seeking mandamus relief, Defendant Commissioner is entitled to summary judgment on this portion of Plaintiffs' claim under count one.

■ With respect to the remaining eight cases of count one, Plaintiffs assert that the Commissioner did not properly pay their attorney fees in accordance with 42 U.S.C. § 406(a), and they seek mandamus relief to compel the Commissioner to pay these fees. Defendant Commissioner has presented the following undisputed facts regarding these eight cases:

*Veasley:* One quarter (25%) of Veasley's total past-due benefits was $2,367.77. Ex. 1, Cohn Depo. at 176; Def. Ex. 7, Veasley Documents, at 1. An ALJ approved a fee of $2,022, which, according to SSA records, was paid to Plaintiffs on February 13, 2012. Def. Ex. 7, Veasley Documents at 1–7; Def. Ex. 4, Declaration of Awilda Roman, at 1.

*L. Wright:* The Commissioner approved attorney fees for Plaintiffs in the amount of $1,614 for Wright and $807.00 for Wright's child. Def. Ex. 2, Plaintiffs Supp. Discovery Resp. at 5; Def. Ex. 8, L. Wright Documents, at 1–2. These amounts in total ($2,421) equaled the total amount of past-due benefits withheld by the Commissioner. Def. Ex. 8, L. Wright Documents at 1–2. Although Plaintiffs claim that they received no fees, SSA records show that all approved fees related to this case were paid on May 14, 2008. Def. Ex. 5, Declaration of Martha Shepherd, at 1–2. On October 13, 2009, the Commissioner notified Plaintiffs that SSA had mailed a check to them for these fees on May 14, 2008. Def. Ex. 8, L. Wright Documents at 2–3.

*Thomas:* The Commissioner approved an attorney fee for Plaintiffs in the amount of $3,703.50. Amended Complaint at 4; Def. Ex. 2, Plaintiffs Supp. Discovery Resp. at 5, Def. Ex. 9, Thomas Documents, at 6–9. According to SSA records, the Commissioner paid Plaintiffs attorney fees in the amount of $3,703.50 on July 18, 2008, and this figure equals the total amount of Thomas's past due benefits withheld by the Commissioner. Def. Ex. 9, Thomas Documents at 1–5; Def. Ex. 5, Shepherd Decl. at 1–2.

*Forester:* The Commissioner approved an attorney fee for Plaintiffs of $2,452.50 on or about April 7, 2008, and subsequently paid Plaintiffs this amount on July 18, 2008. Def. Ex. 10, Forester Documents, at 1–5, 8–10. Prior to the payment, SSA notified Plaintiffs on April 7, 2008, that (1) they were authorized to charge and collect a fee in the amount of $2,452.50 and (2) the Commissioner did not withhold the fee from Forester's past-due benefits. *Id.* at 6–7. The Commissioner instructed Plaintiffs to look to Forester for payment of the attorney fee, and, if Plaintiffs had problems collecting the fee, they should contact the Commissioner. *Id.* at 7. On April 10, 2008, Plaintiffs notified the Commissioner that Forester was unwilling to pay the approved fee, and the Commissioner subsequently paid Plaintiffs $2,452.50 and charged Forester an overpayment in that amount. *Id.* at 2–3, 8. SSA's records in this case show that all approved fees related to this case were paid on July 18, 2008. Def. Ex. 5, Shepherd Decl. at 2.

*Lufcy:* Lufcy was not awarded past-due benefits with which to pay attorney fees. Def. Ex. 5, Shepherd Decl. at 2, Def. Ex. 11, Lufcy Documents, at 1–5. On October 21, 2010, SSA authorized Plaintiffs to charge a fee of $3,500. The order approving Plaintiffs' fees stated: "[t]he representative should look to the claimant for pay-

ment of the authorized fee in this case" and "[t]he law does not permit direct payment of a fee by us when there are no past-due benefits." Def. Ex. 11, Lufcy Documents at 6–7.

*Hinshaw:* The Commissioner authorized Plaintiffs to charge a fee of $6,161.50, which was equal to 25% of Hinshaw's total past-due benefits. Def. Ex. 12, Hinshaw Documents, at 1–3. On March 7, 2011, the Commissioner notified Plaintiffs that "inadvertently, no past-due benefits were withheld," and instructed Plaintiffs to collect the fee from the client. The letter specified that, "[i]f you experience difficulty in collecting the fee from [your] client, you should notify us. We will then proceed to withhold benefits from [Hinshaw] to the extent of your approved fee or the amount that should have been withheld, whichever is smaller." *Id.* at 2. SSA has reviewed the records in this case and has found no records indicating that Plaintiffs attempted to collect the fees from Hinshaw and no requests by Plaintiffs to assess an overpayment. Def. Ex. 5, Shepherd Decl. at 2.

*York:* The Commissioner authorized Plaintiffs to charge a fee of $5,300; however, 25% of York's total past-due benefits was $4,636.55. Def. Ex. 2, Plaintiffs Supp. Discovery Resp. at 4, Def. Ex. 13, York Documents, at 1–2. On March 6, 2012, the Commissioner notified Plaintiffs that SSA had not withheld past-due benefits to pay the fee and instructed Plaintiffs to collect the fee from their client. Def. Ex. 13, York Documents at 2. The letter specified that "[i]f you experience difficulty in collecting the fee from your client, you should notify us. We will then proceed to withhold benefits from [York]'s monthly checks to pay up to $4,636.55 of your fee." *Id.* The letter further explained that, although the approved fee was $5,300, the Commissioner could only pay up to 25% of past-

due benefits directly, and "collection above the $4,636.55 would be an issue between you and your client." *Id.* SSA has found no records indicating that Plaintiffs notified the Commissioner that they were unable to collect from York or requests by Plaintiffs to assess an overpayment in this case. Def. Ex. 4, Roman Decl. at 1.

*Gwaltney:* SSA awarded benefits on February 28, 2009. Def. Ex. 14, Gwaltney Documents, at 7–13. In Gwaltney's award letter, the Commissioner explained that SSA did not withhold her past-due benefits for Plaintiffs because they "did not register for direct payment before we completed our work on your claim." *Id.* at 10. The form necessary to register for direct payment, Form SSA–1695, was not received until on or about April 1, 2009. *Id.* at 4. On June 22, 2011, the Commissioner authorized Plaintiffs to collect a fee in the amount of $4,019.87. *Id.* at 5–6. Plaintiffs and Gwaltney were notified on October 1, 2011, that Gwaltney was required to make arrangements to pay Plaintiffs the authorized fee because Plaintiffs did not timely register to qualify for direct payment of the authorized fee from past-due benefits and, thus, the Commissioner did not withhold any past-due benefits to pay Plaintiffs the authorized fee. *Id.* at 1–3. SSA again notified Plaintiffs on February 10, 2012, that it had approved a $4,019.87 fee, and that SSA did not receive Plaintiffs' form SSA–1695 until after effectuation of Gwaltney's award. *Id.* at 14. The Commissioner's letter further explained that Plaintiffs needed to collect the fee directly from Gwaltney. The letter also instructed Plaintiffs that, if their records showed that they sent their SSA–1695 before SSA processed Gwaltney's award, to provide SSA with those records. SSA records do not indicate that Plaintiffs provided proof to the Commissioner of their timely filing of the SSA–1695. Def. Ex. 6, Declaration of Pam Gillett, at 1. Without proof that Plain-

tiffs timely filed their SSA–1695, the Commissioner cannot directly pay Plaintiffs' the approved fee, and "[t]here is nothing more the agency can do on this case." *Id.*

An attorney representing a claimant in an appeal of a denial of Social Security disability benefits is entitled to a reasonable fee. *See* 42 U.S.C. § 406(a)(1). The Social Security Act specifies that the Commissioner may prescribe rules and regulations prescribing the maximum fees which may be charged in connection with any claim before SSA. *Id.* Regulations implementing the attorney fee provisions of the Act are entitled to legislative effect because Congress expressly delegated to the Commissioner, not the courts, the authority to interpret section 206 of the Act and prescribe regulations in accordance with that provision. *See Schweiker v. Gray Panthers,* 453 U.S. 34, 44, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981).

The Commissioner evaluates fee petitions using a variety of factors including the complexity of the case, the skill required, the time spent, and the results achieved for the claimant. *Id.* at §§ 404.1725(b)(1), 416.1525(b)(1); Program Operations Manual System ("POMS") GN 03930.010.[6] The regulations provide that the Commissioner decides the amount of the fee, if any, that a representative may charge or receive; if the representative is an attorney and the claimant is entitled to past-due benefits, the Commissioner will pay the authorized fee, or a part of the authorized fee, directly to the representa-

tive out of the past-due benefits, subject to the limitations described in the regulations. *See* 20 C.F.R. §§ 404.1720(b)(1, 4), 416.1520(b)(1, 4).

The Act lays out the procedure for the Commissioner to follow if a claimant has been awarded past-due benefits. The Act states that, in the case of established past-due benefits for a claimant, if the claimant has a fee agreement with a representative and it has been submitted to the Commissioner prior to the date of the first favorable determination regarding the claim and the fee specified in the agreement does not exceed 25% of the past-due benefits or $4,000, whichever is less, then the Commissioner **shall** approve that agreement. 42 U.S.C. § 406(A)(i-iii) (emphasis added).[7] The Act also states "...if the claimant is determined to be entitled to past-due benefits under this title... and the person representing the claimant is an attorney, the Commissioner of Social Security shall, ...certify for payment out of such past-due benefits to such attorney an amount equal to so much of the maximum fee as does not exceed 25 percent of such past-due benefits." 42 U.S.C. § 406(a)(4). This language creates a duty owed by the Commissioner to certify for payment the appropriate amount owed to an attorney for representation of a claimant when the claimant is found to be owed past-due benefits and attorney fees have been awarded under a fee agreement or fee petition.

---

**6.** Although the POMS is a policy and procedure manual that does not have the force and effect of law, it is persuasive and "explains the meaning of the Social Security Act terms as well as the meaning intended by terms appearing within the regulations." *Davis v. Sec'y of Health & Human Servs.,* 867 F.2d 336, 340 (6th Cir.1989).

**7.** The Act also provides that the Commissioner may increase the $4,000 limit from time to

time. *See* 42 U.S.C. § 406(a)(2)(A)(iii). The Commissioner increased the maximum amount to $5,300 beginning with claims effectuated in 2002 and again increased the maximum amount to $6,000 beginning June 21, 2009. *See* Maximum Dollar Limit in the Fee Agreement Process, 74 Fed.Reg. 6068 (Feb. 4, 2009). The maximum dollar amount available depends on the date of the approved agreement.

Attorneys who represent claimants pursuant to a fee agreement must satisfy these statutory prerequisites: (1) the agreement must be submitted in writing to the Commissioner prior to the Commissioner's decision regarding the claim; (2) the fee specified must not exceed the lesser of 25% of past-due benefits or $6,000; and (3) the Commissioner's decision is favorable to the claimant. 42 U.S.C. § 406(a)(2)(A); POMS GN 03940.003A. The statute provides a cap but allows the Commissioner to increase the maximum dollar amount limit. *See* 42 U.S.C. § 406(a)(2)(A) (permitting increases); 74 Fed.Reg. 6080–02, 2009 WL 247991 (F.R. Feb. 4, 2009) (increasing the limit to $6,000, effective June 22, 2009).

If the prerequisites are satisfied, the Commissioner "shall approve that agreement at the time of the favorable determination." 42 U.S.C. 406(a)(2)(A). The Commissioner can reduce the amount to be paid if the "fee is clearly excessive for services rendered." *Id.* § 406(a)(3)(A). Unless the representative files a fee agreement before the date that the Commissioner makes the first favorable determination or decision that the representative worked toward achieving, the Commissioner presumes that the representative will either file a fee petition or waive a fee. POMS GN 03930.005B3.

Regardless of the method a claimant's attorney chooses, i.e., fee petition or fee agreement, the Commissioner owes a duty, pursuant to 42 U.S.C. § 406(a) and the above-referenced regulations, (1) to certify for payment out of the past-due benefits to the attorney "an amount equal to so much of the maximum fee as does not exceed 25% of such past-due benefits" and (2) to pay the authorized fee directly to Plaintiffs out of the past-due benefits award. As this court has explained, the Commissioner owes a duty to pay Plaintiffs attorney fees

that are actually owed. *See* Order Denying Motion to Dismiss at 8.

Looking at the eight cases in which Plaintiffs contend that they have not received all the attorney fees due them, the court finds that there is no genuine issue as to whether the Commissioner complied with his own regulations and policy to pay the attorney fees that were actually owed. Although mandamus may be used to compel the Commissioner to perform a duty owed to Plaintiffs, the Commissioner has already paid attorney fees for these cases in accordance with 42 U.S.C. § 406(a) and, thus, has fulfilled his duty to Plaintiffs.

In the case of Veasley, it is undisputed that 25% of Veasley's past-due benefits amounts to $2,367.77. SSA approved a fee of only $2,022, which SSA paid to Plaintiffs on February 13, 2012. While Plaintiffs may contend that they are entitled to 25% of the past-due benefits, the regulations only require the Commissioner to pay Plaintiffs out of the past-due benefits the smaller of 25% of the total past-due benefits *or* the fee set by the Commissioner. 20 C.F.R. §§ 404.1730(b)(1), 416.1530(b)(1). In this case, the Commissioner owes only a duty to pay $2,022 because that is the amount approved by the ALJ. Thus, the Commissioner has performed his duty by approving a reasonable attorney fee of $2,022 and by directly paying Plaintiffs this amount.

Plaintiffs seek mandamus because they say that they have no evidence that they were paid their approved fees in the case of L. Wright. There is no dispute that the approved fee is $1,614 for Wright and $807 for Wright's child, and there is no dispute that these amounts in total ($2,342) equaled 25% percent of Wright's total past-due benefits. Although Plaintiffs claim that they received no fees, Ms. Shepherd, Social Insurance Program Specialist in SSA's Atlanta Regional Office, reviewed

the Social Security records pertaining to Wright and testified that SSA paid Plaintiffs all of their approved fees in this case on May 14, 2008. Accordingly, the Commissioner has performed his duties under the law by approving a reasonable attorney fees equal to 25% of the total past-due benefits and paying Plaintiffs this amount.

In the Thomas case, Plaintiffs state that they have no evidence that they were paid their approved fee of $3,703.50. Plaintiffs were paid attorney fees in the amount of $3,703.50 on July 18, 2008, which equals 25% of Thomas's past-due benefits. Ms. Shepherd reviewed the Social Security records pertaining to Thomas and testified that SSA paid Plaintiffs all of their approved fees in this case. Thus, the Commissioner has performed his duties under the law by approving a reasonable attorney fee of $3,703.50 and by directly paying Plaintiffs this amount, and Plaintiffs cannot show that they have a right to any relief beyond what the Commissioner has already provided.

Plaintiffs seek mandamus in the Forester case because they believe that SSA has not processed their fee petition and has not paid them any fee to date. Plaintiffs have acknowledged that the correct amount of fees owed for representing Forester was $2,452.50, as approved by the Commissioner. Def. Ex. 10, Forester Documents at 9–10. Ms. Shepherd reviewed the Social Security records pertaining to Forester and determined that SSA paid Plaintiffs their approved fees in the amount of $2,452.50 on July 18, 2008.[8] Because the Commissioner has performed his duties by approving a reasonable attorney

fee and by directly paying Plaintiffs this amount, Plaintiffs cannot show that they have a right to any relief beyond what the Commissioner has already provided.

Plaintiffs assert that they were approved an attorney fee of $3,500 but were not paid in the Lufcy case. Lufcy was not awarded past-due benefits. As stated in the order approving Plaintiffs' fees, "[t]he representative should look to the claimant for payment of the authorized fee in this case" and "[t]he law does not permit direct payment of a fee by us when there are no past-due benefits." Def. Ex. 11, Lufcy Documents at 6. Because the Commissioner has a duty only to pay the authorized fee directly to a plaintiff's representative out of Plaintiffs' past-due benefits, no duty to pay arises when there are no past-due benefits. Thus, the Commissioner does not owe any duty to pay fees in the Lufcy case, and Plaintiffs are not entitled to mandamus relief on this case.

In the cases of Hinshaw and York, Plaintiffs allege that they have not received payment of attorney fees. There is no dispute as to the amount of fees or that the fees to be paid are "an amount equal to so much of the maximum fee as does not exceed 25% of such past-due benefits." The issue is whether the Commissioner had a duty to pay attorney fees directly to Plaintiffs.

In the Hinshaw case Plaintiffs were authorized a fee of $6,161.50, which equaled 25% of Hinshaw's total past-due benefits. In the York case, Plaintiffs were approved a fee of $5,300. However, 25% of York's past-due benefits was $4,636.55, which is

---

**8.** The Commissioner did not originally withhold the $2,452.50 from Forester's past-due benefits. On April 7, 2008, the Commissioner instructed Plaintiffs to look to Forester for payment of the attorney fee, and, if they had problems collecting the fee, they should contact the Commissioner. On April 10, 2008, Plaintiffs notified the Commissioner that Forester was unwilling to pay the approved fee, and the Commissioner subsequently paid Plaintiffs and assessed Forester a consequent overpayment in the amount of $2,452.50. Def. Ex. 10, Forester Documents.

the most that the Commissioner can certify as payment. In neither case did the Commissioner pay fees directly to Plaintiff because the Commissioner inadvertently released the past-due benefits to the claimants.

To rectify this matter, the Commissioner notified Plaintiffs on March 7, 2011, that SSA inadvertently released Hinshaw's past-due benefits and instructed Plaintiffs to collect the fee from the client. Def. Ex. 12, Hinshaw Documents at 2. This letter specified that, "[i]f you experience difficulty in collecting the fee from [your] client, you should notify us. We will then proceed to withhold benefits from [Hinshaw] to the extent of your approved fee or the amount that should have been withheld, whichever is smaller." *Id.* Similarly, the Commissioner notified Plaintiffs on March 6, 2012, that SSA did not withhold past-due benefits to pay their attorney fees and instructed Plaintiffs to collect the fee from York, Def. Ex. 13, York Documents at 2. The letter also specified that, "[i]f you experience difficulty in collecting the fee from your client, you should notify us. We will then proceed to withhold benefits from [York]'s monthly checks to pay up to $4,636.55 of your fee." *Id.* The letter further explained that, although the approved fee was $5,300, the Commissioner could only pay up to 25% of past-due benefits directly, and "collection above the $4,636.55 would be an issue between you and your client." *Id.*

The POMS specifies that when SSA "inadvertently releases withheld past-due benefits to the claimant, the Commissioner must notify the claimant and the representative of the error. POMS GN 03920.055A. The Commissioner must advise the representative that (1) SSA inadvertently released past-due benefits to the claimant; (2) the representative should contact the claimant to arrange for the payment of the fee; and (3) the representative should contact SSA if the claimant does not respond to the representative's request for payment. *See* POMS GN 03920.055C. The policy further states that, if the representative reports that he has been unable to collect the fee from the claimant, the Commissioner will "[p]ay the representative the maximum amount SSA should have made in direct payment from title II past-due benefits, title XVI past-due benefits, or both," and "[i]nitiate recovery procedures of the amount paid to the representative, including the user fee, by refund or adjustment." POMS GN 03920.055E.

Agency officials have testified that they found no records showing that Plaintiffs notified the Commissioner that they were unable to collect from Hinshaw or York or requested that the Commissioner issue an overpayment. Def. Ex. 4, Roman Decl. at 1, Def. Ex. 5, Shepherd Decl. at 2. As explained by the SSA official who reviewed York's records, "[w]ithout communication from the representative [that he is unable] to collect funds directly from his client, [SSA] can take no further action on the attorney fees … per its policies." Def. Ex. 4, Roman Decl. at 1. Accordingly, the Commissioner's denial of direct payment to Plaintiffs in Hinshaw and York was fully consistent with published POMS guidance on interpreting 42 U.S.C. § 406(a).

The Commissioner did not directly pay Plaintiffs in the Gwaltney case because Plaintiffs did not take the appropriate administrative steps to receive their attorney fees directly from the Commissioner. Plaintiffs were advised that, after Gwaltney was awarded benefits on February 28, 2009, the Commissioner did not withhold Plaintiff's past-due benefits because they "did not register for direct payment before we completed our work on your claim." Def. Ex. 14, Gwaltney Documents at 7–13.

The SSA–1695 form, which is required to register for direct payment, was not provided until on or about April 1, 2009. Def. Ex. 14, Gwaltney Documents at 4.

Gwaltney was notified on October 1, 2011, that she was required to make arrangements to pay Plaintiffs the authorized fee of $4,019.87 because Plaintiffs did not timely register with SSA to qualify for direct payment of the authorized fee from her past-due benefits and the Commissioner did not withhold any past-due benefits to pay Plaintiffs the authorized fee. *Id.* at 1–3. The Commissioner again notified Plaintiffs on February 10, 2012, that SSA had approved a fee of $4,019.87 and that SSA did not receive their SSA–1695 until after SSA effectuated Gwaltney's award. *Id.* at 14. The Commissioner's letter further explained that Plaintiffs would need to collect their fee directly from Gwaltney and, if Plaintiffs' records indicated they sent their SSA–1695 before SSA processed Gwaltney's award, then they must provide SSA with those records.

Despite the Commissioner's instructions to Plaintiffs in accordance with the POMS, Plaintiffs failed to provide proof that they timely filed their SSA–1695 before SSA effectuated Gwaltney's award, and SSA's official found no records showing that Plaintiffs provided proof of timely filing of their SSA–1695 after the issuance of either the October 1, 2011, or February 10, 2012, letters. Def. Ex. 6, Gillett Decl. at 1. The SSA official who reviewed these records has testified that, without proof that Plaintiffs timely filed their SSA–1695, the Commissioner cannot directly pay Plaintiffs' the approved fee, and "[t]here is nothing more the agency can do on this case." *Id.* Accordingly, the Commissioner's denial of direct payment to Plaintiffs was consistent with the POMS guidance that interprets 42 U.S.C. § 406(a).

There is no genuine issue of material fact that the Commissioner complied with his regulations in setting the appropriate attorney fee in accordance with 42 U.S.C. § 406(a) and paying attorney fees actually owed directly to Plaintiffs. Accordingly, this court lacks authority to grant mandamus relief with respect to count one, and the Commissioner is entitled to summary judgment on this count.

*Count Two*

In count two, Plaintiffs allege that the Commissioner did not properly adjudicate the appeal of their attorney fee request in the Carter case. Plaintiffs appealed their fee determination to the Regional Chief Administrative Law Judge ("RCALJ"). Before the RCALJ reviewed the matter, SSA issued Plaintiffs a check for $702.75 ($750 minus the user fee of $47.25) on May 6, 2008, and a second check for $4,649.35 ($4.685.10 minus user fee of $35.75) on October 28, 2009. Ex. 1 to Amended Complaint at 2. On December 10, 2010, the RCALJ issued an order authorizing Plaintiffs to collect an attorney fee in the amount of $750 and finding that the amount of $4,649.35 that was previously paid to Plaintiffs must be refunded to SSA. Ex. 1 to Amended Complaint at 1–2. Plaintiffs seek mandamus to compel the Commissioner to reimburse them for the $4,649.35 that the RCALJ ordered Plaintiffs to return.

In determining that the appropriate amount of Plaintiffs' attorney fee was $750, the RCALJ looked to the factors set forth in 20 C.F.R. §§ 404.1725, 416.1525. These regulations state in relevant part:

(b) Evaluating a request for approval of a fee. (1) When we evaluate a representative's request for approval of a fee, we consider the purpose of the social security program, which is to provide a meas-

ure of economic security for the beneficiaries of the program, together with—

(i) The extent and type of services the representative performed;

(ii) The complexity of the case;

(iii) The level of skill and competence required of the representative in giving the services;

(iv) The amount of time the representative spent on the case;

(v) The results the representative achieved;

(vi) The level of review to which the claim was taken and the level of the review at which the representative became your representative; and

(vii) The amount of fee the representative requests for his or her services, including any amount authorized or requested before, but not including the amount of any expenses he or she incurred.

(2) Although we consider the amount of benefits, if any, that are payable, we do not base the amount of fee we authorize on the amount of the benefit alone, but on a consideration of all the factors listed in this section. The benefits payable in any claim are determined by specific provisions of law and are unrelated to the efforts of the representative. We may authorize a fee even if no benefits are payable.

20 C.F.R. §§ 404.1725(b), 416.1525(b).[9]

 "The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."

*Parra–Morela v. Holder*, 504 Fed.Appx. 461, 462 (6th Cir.2012) (quoting *United States v. Chemical Found., Inc.*, 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131 (1926)). The duty imposed by 20 C.F.R. §§ 404.1725, 416.1525 is to determine an attorney fee based on consideration of the specified factors. *See* 20 C.F.R. §§ 404.1725(b)(1)(i-vi), 416.1525(b)(1)(i-vi); *Buchanan*, 249 F.3d at 492 (the use of a blanket fee cap would be a violation of the Commissioner's duties, because a cap cannot be reconciled with the full consideration of the factors specified in 20 C.F.R. §§ 404.1725(b), 416.1525(b)); *see also Carson*, 633 F.3d at 495 ("If the alleged duty is discretionary or directory, the duty is not owed.") In the present case, the RCALJ considered the factors set forth in 20 C.F.R. §§ 404.1725, 416.1525 in determining Plaintiffs' fee and, thus, properly discharged her duty.[10]

Because the RCALJ considered the factors set forth in 20 C.F.R. §§ 404.1725(b), 416.1525(b) in determining an appropriate attorney fee, this court cannot compel the Commissioner to change or reconsider the attorney fee determination in the Carter case. Accordingly, the Commissioner is entitled to summary judgment on count two.

Plaintiffs have failed to establish that they are entitled to relief under the Mandamus Act, 28 U.S.C. § 1361, and there are no genuine issues of material fact in dispute. Therefore, Defendant Commissioner's motion for summary judgment [DE# 58] is GRANTED, and Plaintiffs' cross motion for summary judgment

---

**9.** Plaintiffs argue that 20 C.F.R. §§ 404.1725, 416.1525 and the process these regulations describe are invalid because the RCALJ should have considered additional factors, such as "level of expertise" and "the amount of risk involved." Plaintiffs cannot use mandamus to attack the validity of a regulation.

**10.** To the extent that Plaintiffs believe that the RCALJ should have better articulated consideration of these factors, the regulation does not require articulation. *See* 20 C.F.R. §§ 404.1725(b)(1), 416.1525(b)(1).

[DE# 64] is DENIED. The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.